Douglas P. Farr (13208)
Jacob D. Barney (16777)
**BUCHALTER, P.C.**
111 S Main St., Suite 600
Salt Lake City, Utah 84111
Telephone: (801) 401-8625
dfarr@buchalter.com
jbarney@buchalter.com

*Attorneys for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF UTAH, SOUTHERN DIVISION**

| | |
|---|---|
| **PAPARAZZI, LLC** d/b/a **PAPARAZZI ACCESSORIES, LLC**, a Utah limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>**MELISSA SORENSON**, an individual, **GERALDINE SOUZA**, an individual, **KYLEE ROBINETTE**, an individual, **MORGAN FERGUSON**, an individual, **JENNIFER DYER**, an individual, **JAIME ROBINSON**, an individual, **JENNIFER CARROL**, an individual, **KIMBERLY DREWRY**, an individual, and **JOHN AND JANE DOES I-X.**<br><br>Defendants. | **VERIFIED COMPLAINT**<br><br>Case No. 4:22-cv00028-DN<br><br>District Judge David Nuffer |

Plaintiff Paparazzi, LLC d/b/a Paparazzi Accessories, LLC ("**Paparazzi**"), by and through its undersigned counsel, hereby alleges the following in support of this lawsuit:

## PARTIES

1. Plaintiff Paparazzi, LLC d/b/a Paparazzi Accessories, LLC is a Utah limited liability company with its principal place of business in St. George, Utah.

2. Defendant Melissa Sorenson ("**Sorenson**") is an individual and resides, on information and belief in Washington, Utah.

3. Defendant Geraldine Souza ("**Souza**") is an individual and resides, on information and belief in Redlands, California.

4. Defendant Kylee Robinette ("**Robinette**") is an individual and resides, on information and belief in Daytona Beach, Florida.

5. Defendant Morgan Ferguson ("**Ferguson**") is an individual and resides, on information and belief in Crown Point, Indiana.

6. Defendant Jennifer Dyer ("**Dyer**") is an individual and resides, on information and belief in Palm Coast, Florida.

7. Defendant Jaime Robinson ("**Robinson**") is an individual and resides, on information and belief in Odessa, Texas.

8. Defendant Jennifer Carroll ("**Carroll**") is an individual and resides, on information and belief in Aberdeen, Idaho.

9. Defendant Kimberly Drewry ("**Drewry**") is an individual and resides, on information and belief in San Bernardino, California.

## JURISDICTION AND VENUE

10. This Court has original jurisdiction over this action pursuant to 28 U.S.C. §1331.

11. Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) as a substantial part of the events giving rise to the claims herein, occurred in this judicial district.

## GENERAL ALLEGATIONS

*Paparazzi's Business*

12. Paparazzi, a fashion accessory wholesaler headquartered in Utah with sales people ("**Consultants**") operating across the United States, is bringing this action against a group of former Consultants who stole confidential and protected information, including information regarding other consultants, operations, finances and other sensitive information, and publicly disclosed it including on social media. Paparazzi is seeking an injunction and damages for breach of contract, among other things.

13. Consultants operate as independent contractors.

14. The relationship between Paparazzi and its Consultants is governed by Paparazzi's Policies and Procedures ("**P&P**").

15. Defendants Souza, Robinette, Ferguson, Dyer, Robinson, Carroll, and Drewry are each former Consultants ("**Ex-Consultant Defendants**"), and therefore the relationship between Ex-Consultant Defendants and Paparazzi was governed by the P&P.

*The Confidential Information and Non-Competition Agreement*

16. Certain Paparazzi employees (not independent contractors) must agree to, and execute, Paparazzi's Confidential Information and Non-Competition Agreement ("**Confidentiality Agreement**"). A copy of the Confidentiality Agreement is attached hereto as **Exhibit A**.

17. Defendant Sorensen is a former Paparazzi employee.

18. On August 20, 2019, Defendant Sorensen acknowledged, and executed, the Confidentiality Agreement as evidenced by the following screenshot from Paparazzi's electronic business records:



19. Section 1(a) of the Confidentiality Agreement states, in part:

I agree at all times during the term of my employment and thereafter, to hold in strictest confidence, and not to use, except for the exclusive benefit of the Company, or to disclose to any person, firm or entity without written authorization of an authorized officer of the Company (other than myself), and Confidential Information of the Company. I understand that "Confidential Information" means any non-public information [including]: Company proprietary information . . . [or] trade secrets or know-how, including but not limited to, research plan, research results, processes, designing, methods, compositions, employment procedures, business plans, marketing plans, product plans, products, services, suppliers, distributor or Consultant lists or data, and Consultants (including, but not limited to, Consultants of the Company on whom I

4

>call or with whom I become acquainted during the terms of my service on behalf of the Company), markets, software, specifications, inventions, operations, procedures, compilations or data, technology, designs, finances or other business information disclosed to me by the Company, either directly or indirectly in writing, orally, or by drawings or observation.

(Ex. A at 1).

20. Paparazzi's confidential, protected information includes, but is not limited to, all information regarding consultants, operations, finances, etc. (the "**Confidential Information**").

(*Id.*)

21. Section 1(b) of the Confidentiality Agreement includes, in part, the following acknowledgment:

>I acknowledge that during my employment with the Company, I will have access to Confidential Information, all of which shall be made accessible to me only in strict confidence; that unauthorized disclosure of Confidential Information will damage the Company's business; and that the restrictions contained in this agreement are reasonable and necessary for the protection of the Company's legitimate business interest.

(*Id.*)

22. Section 1(c) of the Confidentiality Agreement includes, in part, the following provisions regarding third-party information:

>I recognize that the Company has received and in the future will receive from third parties their confidential or proprietary information subject to a duty on the Company's part to maintain the confidentiality of such information and to use it only for certain limited purposes. I agree to hold all such confidential or proprietary information in the strictest confidence and not to disclose it to any person, firm or corporation or to use it except as necessary in carrying out my work for the Company consistent with the Company's agreement with such third party.

(*Id.* at 1–2.)

23. Section 3(c) of the Confidentiality Agreement provides, in part, the following provision concerning survival of the Confidentiality Agreement after an employee's termination:

> My obligations under this agreement shall survive the termination of my employment with the Company and shall thereafter be enforceable whether or not such termination is claimed or found to be wrongful or to constitute or result in a breach of any contract or of any other duty owed or claimed to be owed to me by the Company or any Company employee, agent, or contractor.

(*Id.* at 3.)

24. Section 5 of the Confidentiality Agreement provides, in part, the following provisions concerning remedies for breach of the Confidentiality Agreement:

> I acknowledge that any violation of this Agreement will cause the Company immediate and irreparable harm and that the damages which the Company will suffer may be difficult or impossible to measure. Therefore, upon any actual or impending violation of this Agreement, the Company will be entitled to the issuance of a restraining order, preliminary and permanent injunction, without bond, restraining or enjoining such violation by me or any entity or person acting in concert with me. This remedy will be in addition to, and not in limitation of, any other remedy which may otherwise be available to the Company. Moreover, if I breach, or threaten to commit a breach of my duty to maintain the confidentiality of the confidential information revealed by the Company, the following rights remedies, each of which rights and remedies will be in addition to, and no in lieu of, any other rights and remedies available to the Company at law or equity:
>
>     a. <u>Specific Performance</u>. The right and remedy to have the duty of confidentiality specifically enforced by any court having equity jurisdiction, all without the need to post a bond or any other security, or to provide an adequate remedy, it being acknowledged and agreed that any such breach or threatened breach will cause irreparable injury to the Company and that monetary damages will not provide an adequate remedy to the Company.
>
>     b. <u>Accounting and Indemnification</u>. The right and remedy to require me;
>
>        . . .
>
>       ii. To indemnify the Company against any other losses, damages (including special and consequential damages, costs and expense, including actual attorney's fees and course costs, which may be incurred by the Company and which result from, or arise out of, any breach or threatened breach of the duty of confidentiality.

(*Id.* at 4–5.)

6

*Facebook Messenger Group Chat*

25. Upon information and belief, shortly after she was terminated, Sorensen became part of a Facebook Messenger group chat titled Papa Chat United (the "**Group Chat**") on or about February 14, 2022.

26. Upon information and belief, the Group Chat was organized by the Ex-Consultant Defendants for the express purpose of organizing efforts to harass and harm Paparazzi.

27. Upon information and belief, all of the Defendants individually participated in the Group Chat over the course of several months.

28. Upon information and belief, the Group Chat was used as a means for Ex-Consultant Defendants to communicate with Sorenson about stealing confidential Paparazzi documents and information, including information which is defined as Confidential Information pursuant to the Confidentiality Agreement.

29. Recently, Paparazzi obtained access to certain messages exchanged by the Defendants in the Group Chat.

30. On February 24, 2022, Sorenson sent a message in the Group Chat explaining that, when she was fired, Paparazzi shut down her lines of business communication, including access to Paparazzi's databases, company email, and other Paparazzi owned and controlled programs and information.

31. Despite acknowledging that Paparazzi had clearly revoked her access to its databases, Sorenson explained that she had improperly retained access to a corporate administration account, which had not been shut down following Sorenson's termination ("**Paparazzi Admin Account**").

32. Sorenson reported in the Group Chat that she could login to Paparazzi's confidential databases through the Paparazzi Admin Account.

33. Upon learning of Sorenson's improper and illegal access to the Paparazzi Admin Account, Ex-Consultant Defendants conspired, encouraged, and worked with Sorenson to use the improperly retained login information to access and share Paparazzi's Confidential Information.

34. For example, Souza directly asked Sorenson: "with your sign in is there anything you think we can get before they lock you out?"

35. Souza also asked Sorenson: "On that access you have There [sic] isn't anyway you can tell how many active consultants there are?"

36. From these messages and others, it is clear that Souza and the other Ex-Consultant Defendants wanted to get their hands on as much Confidential Information as they could through Sorenson's unauthorized access to the Paparazzi Admin Account.

37. After further investigation, Sorenson reported in the Group Chat that she could "access any [Paparazzi] docs they put out for consultants as well as any current consultants [sic] accounts including[,] well[,] everything on the account. [Including] new releases they will be putting out for the day."

38. In an effort to protect herself and her co-conspirators, Sorenson explained in the Group Chat that she would "spoof" her IP address and use a VPN to avoid getting caught by Paparazzi.

39. Clearly, Sorenson and the Ex-Consultant Defendants knew their access of the Confidential Information was improper and illegal.

40. Wanting to provide even more assistance, Sorenson said she would "see if [she could] find out [other Confidential Information] from someone who still works there.. [sic] she has access to the info and [Sorenson could] randomly bring it up somehow".

41. Ex-Consultant Defendants conspired with Sorenson to access Confidential Information regarding numerous active Paparazzi consultants.

42. Sorenson then accessed, downloaded, and shared vast amounts of Confidential Information with the Ex-Consultant Defendants in the Group Chat, including the total number of Paparazzi Consultants, customers, Consultant profiles, and active Consultants that she stole from the Paparazzi computer database.

43. Upon information and belief, Sorenson accessed and shared Paparazzi's financial data and information, including information relating to sales and commission reports.

44. Sorenson shared information regarding Paparazzi's business operations and processes, including operations relating to some of Paparazzi's active Consultants.

45. Upon information and belief, Sorenson shared multiple iPhone screen recordings with the Ex-Consultant Defendants in the Group Chat that disclosed Paparazzi's Confidential Information.

46. Upon information and belief, Sorenson also emailed "large files" to the Ex-Consultant Defendants.

47. The large files attached to these emails contained Confidential Information, including commission totals for many active Consultants.

48. Upon information and belief, Sorenson and the Ex-Consultant Defendants shared the Confidential Information that Sorenson accessed, downloaded, and disclosed with other people.

49. Sorenson and the Ex-Consultant Defendants did so to try and harm and disrupt Paparazzi's business, including, for example, its operations and its contractual relationships with its Consultants.

50. Obviously, Paparazzi never authorized nor permitted Defendants' improper and illegal access of Paparazzi's Confidential Information.

51. And Paparazzi never authorized nor permitted Defendants to share the Confidential Information via the internet.

52. At all times, Defendants acted in secret, and in such a way as to prevent Paparazzi from learning of their unlawful actions.

53. In fact, at one point in the Group Chat, Sorenson even asked "just to make sure.. no one is ever going to know where these came from correct? . . . like no one will ever know how they were obtained."

54. Carrol responded: "Never".

### FIRST CLAIM FOR RELIEF
**(Injunctive Relief – All Defendants)**

55. Paparazzi realleges and incorporates by reference the allegations in the preceding paragraphs.

56. Sorenson signed and agreed to abide by the Confidentiality Agreement which contained the following language: " . . . upon any actual or impending violation of this [Confidentiality] Agreement, the Company will be entitled to the issuance of a restraining order, preliminary and permanent injunction, without bond, restraining or enjoining such violation . . . ."

57. Sorenson breached the Confidentiality Agreement by improperly accessing, downloading, and disclosing vast amounts of Confidential Information regarding Paparazzi's business, Consultants, and other proprietary and restricted information.

58. As a result of Sorenson's breach of the Confidentiality Agreement, Paparazzi has been damaged and is entitled to preliminary and permanent injunctive relief.

59. Specifically, certain Consultants have discovered Defendants' improper and illegal access to the Confidential Information, including Defendants' access of these Consultants' addresses, personal information, financial data, and commission information.

60. As to the Ex-Consultant Defendants, their intentional interference with Paparazzi's economic relationships, their conspiracy to steal Paparazzi's Confidential Information, and their efforts to harm Paparazzi are causing irreparable harm to Paparazzi and are sufficient grounds to provide preliminary and permanent injunctive relief to Paparazzi.

## SECOND CLAIM FOR RELIEF
**(Breach of Contract - Sorenson)**

61. Paparazzi realleges and incorporates by reference the allegations in the preceding paragraphs.

62. Sorenson and Paparazzi entered into a valid, enforceable agreement (Confidentiality Agreement), which required Sorenson to keep Paparazzi's confidential and proprietary information in strict confidence, including but not limited to all information regarding Consultants, operations, finances, etc.

63. Paparazzi performed under the Confidentiality Agreement by providing employment and pay to Sorenson.

64. By its express terms, Sorenson's obligations pursuant to the Confidentiality Agreement survive her termination.

65. Sorenson has breached the Confidentiality Agreement by accessing and disseminating Paparazzi's Confidential Information.

66. As a result of Sorenson's breach of the Confidentiality Agreement, Paparazzi has suffered damages, including lost business and its reasonable attorneys' fees and costs incurred herein.

### THIRD CLAIM FOR RELIEF
**(Breach of the Implied Covenant of Good Faith and Fair Dealing - Sorenson)**

67. Paparazzi realleges and incorporates by reference the allegations in the preceding paragraphs.

68. The Confidentiality Agreement contained an implied covenant of good faith and fair dealing.

69. Sorenson violated that implied covenant when she surreptitiously obtained and disseminated Paparazzi's Confidential Information.

70. Indeed, Sorenson deliberately went against the intention and spirit of the Confidentiality Agreement by conspiring to illegally access Paparazzi's databases, steal Paparazzi's Confidential Information, and disclose such information to the public.

71. As a result of Sorenson's breach of the implied covenant of good faith and fair dealing, Paparazzi has suffered, and will continue to suffer, damages including lost business and reasonable attorneys' fees and costs.

### FOURTH CLAIM FOR RELIEF
**(Intentional Interference with Economic Advantage – All Defendants)**

72. Paparazzi realleges and incorporates by reference the allegations in the preceding

paragraphs.

73. Defendants have intentionally interfered with Paparazzi's existing and prospective clients and Consultants.

74. Defendants' interference was for the improper purpose of injuring Paparazzi and its business.

75. Defendants' interference was done through improper means as their interference violates settled common law and involved intentionally deceitful acts to surreptitiously obtain, use, and disclose Paparazzi's Confidential Information.

76. Defendants' acts were also contrary to established standards in the industry, as evidenced by Paparazzi's use of the Confidentiality Agreement.

77. As a result of Defendants' improper interference, Paparazzi has been, and will continue to be, damaged, including lost business and reasonable attorneys' fees and costs.

**FIFTH CLAIM FOR RELIEF**
**(Civil Conspiracy – All Defendants)**

78. Paparazzi realleges and incorporates by reference the allegations in the preceding paragraphs.

79. Defendants discussed, conspired, and determined to violate their agreements with Paparazzi, improperly accessing, stealing, using, and disclosing Paparazzi's Confidential Information.

80. Defendants then actually illegally accessed Paparazzi's secure database, stole information from the database, and have used and disclosed such information for the sole purpose of injury Paparazzi.

81. As a direct result of Defendants' conspiracy and unlawful acts, Paparazzi has been, and will continue to be, damaged including lost business and reasonable attorneys' fees and costs.

**SIXTH CLAIM FOR RELIEF**
**(Violation of the Federal Fraud and Computer Abuse Act – 18 U.S.C. § 1030(g) – Sorenson)**

82. Paparazzi realleges and incorporates by reference the allegations in the preceding paragraphs.

83. Sorenson knowingly and intentionally accessed Paparazzi's computer network via the Paparazzi Admin Account despite her knowledge that she did not have authorization.

84. Sorenson knowingly and intentionally obtained Confidential Information from Paparazzi's network.

85. Sorensen's access resulted in loss of Paparazzi's Confidential Information.

86. As a result of Sorenson's unauthorized access, Paparazzi has been damaged and suffered loss, including its sensitive business information and future business.

**PRAYER FOR RELIEF**

WHEREFORE, Paparazzi requests the following relief against all defendants on its claims:

1. For injunctive relief, both preliminary and permanent injunctive relief, as a result of Defendants' improper access, use, and disclosure of Paparazzi's Confidential Information.

2. For an award of damages against Sorenson for breach of contract and the breach of the implied covenant of good faith and fair dealing in an amount to be proven at trial.

3. For an award of damages against Defendants for intentional interference with economic advantage in an amount to be proven at trial.

4. For an award of damages against Defendants for civil conspiracy in an amount to be proven at trial.

5. For an award of damages against Sorensen for violation of the Federal Fraud and Computer Abuse Act in an amount to be proven at trial.

6. For punitive damages.

7. For attorneys' fees and costs of suit incurred herein; and

8. For such other and further relief as the Court may deem just and proper.

**DATED:** April 25, 2022.

                              **BUCHALTER, P.C.**

                              */s/ Douglas P. Farr*
                              Douglas P. Farr
                              Jacob D. Barney
                              *Attorneys for Plaintiff*

**VERIFICATION**

Pursuant to 28 U.S.C. § 1746, the undersigned, being a Founder and Owner of Plaintiff, and having personal knowledge, declares, under penalty of perjury under the laws of the United States of America that the foregoing statements in the Verified Complaint are true and correct to the best of the undersigned's knowledge, information and belief, except for statements that are made upon information, and, in those circumstances, the undersigned believes such statements to be true.

Dated this 25th day of April, 2022.

By: _/s/ Chantel Reeve*_____

Name: _____Chantel Reeve_____

Its: _____Founder and Owner_____

*E-signed by counsel with permission*