Justin L. James (15167)
Dillon P. Olson (16120)
JAMES DODGE RUSSELL & STEPHENS, P.C.
10 West Broadway, Suite 400
Salt Lake City, Utah 84101
Telephone: 801.363.6363
Email:  jjames@jdrslaw.com
          dolson@jdrslaw.com

*Attorneys for Defendants Geraldine Souza, Jaime Robinson, and Jennifer Carrol*

---

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

---

| | |
|---|---|
| PAPARAZZI, LLC d/b/a PAPARAZZI ACCESSORIES, LLC, a Utah limited liability company,<br><br>    *Plaintiff*,<br><br>v.<br><br>MELISSA SORENSON, an individual, GERALDINE SOUZA, an individual, KYLEE ROBINETTE, an individual, MORGAN FERGUSON, an individual, JENNIFER DYER, an individual, JAIME ROBINSON, an individual, JENNIFER CARROL, an individual, KIMBERLY DREWRY, an individual, RENEE BURGESS, an individual, and JOHN AND JANE DOES I-X.<br><br>    *Defendants*. | **ANSWER, COUNTERCLAIM, AND THIRD-PARTY COMPLAINT**<br><br>Case No. 4:22-cv-00028-DB-PK<br><br>District Judge David Barlow |

| | |
|---|---|
| GERALDINE SOUZA, an individual, JENNIFER CARROL, an individual, and JAIME ROBINSON, an individual<br><br>   *Counterclaim Plaintiffs*,<br><br>v.<br><br>PAPARAZZI, LLC d/b/a PAPARAZZI ACCESSORIES, LLC, a Utah limited liability company,<br><br>   *Counterclaim Defendant,* | |
| GERALDINE SOUZA, an individual, JENNIFER CARROL, an individual, and JAIME ROBINSON, an individual<br><br>   *Third-Party Plaintiffs*,<br><br>v.<br><br>MISTY KIRBY, an individual, TRENT KIRBY, an individual, CHANI REEVE, an individual, and RYAN REEVE, an individual,<br><br>   *Third-Party Defendants.* | |

Defendants Geraldine Souza, Jaime Robinson, and Jennifer Carrol (collectively "Counterclaimants"), by and through counsel, hereby respond and answer Plaintiff Paparazzi, LLC's ("Paparazzi") First Amended Verified Complaint (the "Complaint") as follows:

### FIRST DEFENSE

Paparazzi fails to state a claim upon which relief can be granted.

## SECOND DEFENSE

Counterclaimants respond to each of the allegations in the Complaint as follows:

1.      Admit.

2.      Admit.

3.      Admit.

4.      Admit.

5.      Admit.

6.      Admit.

7.      Admit.

8.      Admit.

9.      Admit.

10.      Counterclaimants are without sufficient information to admit or deny the allegations set forth in this paragraph, and on that basis deny ("Deny for Lack of Knowledge").

11.      Admit that jurisdiction is proper in this Court but deny all remaining allegations.

12.      Admit that venue is proper in this Court but deny all remaining allegations.

13.      Admit Paparazzi is headquartered in Utah. Deny all remaining allegations.

14.      The allegations of paragraph 14 call for a legal conclusion to which no response is required. To the extent a response is required, admit Paparazzi designates consultants as independent contractors.

15.      The allegations of paragraph 15 call for a legal conclusion to which no response is required. To the extent a response is required, admit the policies and procedures may apply in defining the relationship.

16.      Deny for Lack of Knowledge.

17.    The T&C speaks for itself. Deny all allegations inconsistent with the T&C.

18.    Admit.

19.    The P&P's speaks for itself. Deny all allegations inconsistent with the P&P's.

20.    The P&P's speaks for itself. Deny all allegations inconsistent with the P&P's.

21.    The P&P's speaks for itself. Deny all allegations inconsistent with the P&P's.

22.    The P&P's speaks for itself. Deny all allegations inconsistent with the P&P's.

23.    The T&C's speaks for itself. Deny all allegations inconsistent with the T&C's.

24.    Deny for Lack of Knowledge.

25.    Deny for Lack of Knowledge.

26.    Deny for Lack of Knowledge.

27.    The Confidentiality Agreement speaks for itself. Deny all allegations inconsistent
therewith.

28.    The Confidentiality Agreement speaks for itself. Deny all allegations inconsistent
therewith.

29.    The Confidentiality Agreement speaks for itself. Deny all allegations inconsistent
therewith.

30.    The Confidentiality Agreement speaks for itself. Deny all allegations inconsistent
therewith.

31.    The Confidentiality Agreement speaks for itself. Deny all allegations inconsistent
therewith.

32.    The Confidentiality Agreement speaks for itself. Deny all allegations inconsistent
therewith.

33.     Admit Paparazzi terminated Souza and that Souza appealed the termination. Deny the termination was proper.

34.     Deny.

35.     Deny.

36.     Deny.

37.     Deny for Lack of Knowledge the allegations relating to Reid. Deny the remaining allegations.

38.     Deny.

39.     Deny.

40.     Deny.

41.     Deny.

42.     Admit.

43.     Deny.

44.     Deny.

45.     Deny.

46.     Deny for Lack of Knowledge.

47.     Deny for Lack of Knowledge.

48.     Deny.

49.     Deny.

50.     Deny.

51.     Admit.

52.     Admit.

53.     Deny.

54.     Admit.

55.     Deny.

56.     Deny.

57.     Admit Counterclaimants did not believe the information was confidential. Deny the remaining allegations.

58.     Admit Sorenson indicated that Paparazzi employees wanted to meet. Deny the remaining allegations.

59.     Deny.

60.     Deny.

61.     Deny.

62.     Deny.

63.     Deny.

64.     Deny.

65.     Deny.

66.     Deny.

67.     Deny.

68.     Deny for Lack of Knowledge.

69.     Deny for Lack of Knowledge.

70.     Deny.

71.     Deny.

72.     Deny.

73.     Deny.

74.     Deny.

75.    Admit.

76.    Admit.

77.    Deny.

78.    Deny.

79.    Deny.

80.    Deny.

## FIRST CLAIM FOR RELIEF
### *(Injunctive Relief)*

81.    Counterclaimants incorporate their responses to the preceding allegations herein.

82.    Deny.

83.    Deny.

84.    Deny.

85.    Deny.

86.    Deny.

## SECOND CLAIM FOR RELIEF
### *(Breach of Contract)*

87.    Counterclaimants incorporates the responses to the preceding allegations herein.

Because the allegations are directed solely at Sorensen, none of Counterclaimants respond to

paragraphs 87–92. To the extent a response is required, Counterclaimants respond as follows:

88.    Deny.

89.    Deny.

90.    Deny.

91.    Deny.

92.    Deny.

## THIRD CLAIM FOR RELIEF
*(Breach of the Covenant)*

93.    Counterclaimants incorporates the responses to the preceding allegations herein. Because the allegations are directed solely at Sorensen, none of Counterclaimants respond to paragraphs 94–97. To the extent a response is required, Counterclaimants respond as follows:.

94.    Deny.

95.    Deny.

96.    Deny.

97.    Deny.

## FOURTH CLAIM FOR RELIEF
*(Intentional Interference with Economic Advantage)*

98.    Counterclaimants incorporate the responses to the preceding allegations.

99.    Deny.

100.    Deny.

101.    Deny.

102.    Deny.

103.    Deny.

## FIFTH CLAIM FOR RELIEF
*(Civil Conspiracy)*

104.    Counterclaimants incorporate the responses to the preceding allegations.

105.    Deny.

106.    Deny.

107.    Deny.

## SIXTH CLAIM FOR RELIEF

*(Violation of 18 U.S.C. § 1030(g))*

108.    Souza incorporate the responses to the preceding allegations. Because the allegations are made only against Sorensen and Souza, the remaining Counterclaimants do not respond to the allegations in paragraphs 108–112.

109.    Deny.

110.    Deny.

111.    Deny.

112.    Deny.

## SEVENTH CLAIM FOR RELIEF
*(Breach of Contract)*

113.    Counterclaimants incorporate the responses to the preceding paragraphs.

114.    Deny.

115.    Deny.

116.    Deny.

117.    Deny.

118.    Deny.

## EIGHTH CLAIM FOR RELIEF
### *(Breach of the Covenant)*

119.    Counterclaimants incorporate the responses to the preceding paragraphs.

120.    Deny.

121.    Deny.

122.    Deny.

123.    Deny.

## THIRD DEFENSE

Paparazzi's claims are barred by the doctrine of estoppel, laches, unclean hands, waiver, acquiescence, consent, ratification, novation, or offset.

## FOURTH DEFENSE

Paparazzi's claims are barred based on Paparazzi's prior material breach or its breach of good faith and fair dealing.

## FIFTH DEFENSE

Paparazzi's claims are barred because Counterclaimants are whistle-blowers.

## SIXTH DEFENSE

Paparazzi's claims are barred by the economic loss rule.

## SEVENTH DEFENSE

Paparazzi's claims are barred by statute.

## EIGHTH DEFENSE

Paparazzi's claims are barred by reason or operation of failure of conditions precedent.

## NINTH DEFENSE

Paparazzi's claims are barred under the doctrine of public policy.

## NINTH DEFENSE

Paparazzi's claims are barred to the extent it failed to mitigate its damages, under the doctrine of avoidable consequences, or to the extent its damages claims are too speculative and/or remote.

## TENTH DEFENSE

Paparazzi's claims are barred by reason that Paparazzi's damages, if any, were caused by its own actions or by the actions of a third party outside the control of Counterclaimants.

## ELEVENTH DEFENSE

Counterclaimants reserve the right to assert additional defenses as this matter progresses and as additional information is discovered.

## TWELFTH DEFENSE

Counterclaimants deny all allegations not specifically admitted herein, including each and every request in Plaintiff's Prayer for Relief.

NOW, THEREFORE, having fully responded to Plaintiff's Complaint, Counterclaimants pray the Court dismiss Plaintiffs claims with prejudice and award Counterclaimants their attorney fees and costs and such other awards as the Court deems just and equitable.

## COUNTERCLAIM AND THIRD-PARTY COMPLAINT

Counterclaimants Souza, Robinson, and Carrol (collectively the "Counterclaim Plaintiffs") hereby allege and claim against Plaintiff and Counterclaim Defendant Paparazzi and against Third-Party Defendants Misty Kirby, Trent Kirby, Chantel Reeve, and Ryan Reeve as follows:

## PARTIES, JURISDICTION, AND VENUE

1. Counterclaim Plaintiff and Third-Party Plaintiff Geraldine Souza is an individual residing in California.

2. Counterclaim Plaintiff and Third-Party Plaintiff Jennifer Carrol is an individual residing in Idaho.

3. Counterclaim Plaintiff and Third-Party Plaintiff Jamie Robinson is an individual residing in Texas.

4. Counterclaim Defendant Paparazzi, LLC is a Utah limited liability company with its principal place of business in St. George, Utah.

5. Third-party Defendant Misty Kirby is a co-founder of Paparazzi and a resident of the state of Utah.

6. Third-party Defendant Trent Kirby is a co-founder of Paparazzi and a resident of the state of Utah.

7. Third-party Defendant Chantel Reeve is a co-founder of Paparazzi and a resident of the state of Utah.

8. Third-party Defendant Ryan Reeve (together with Misty Kirby, Trent Kirby, and Chantel Reeve the "Founders") is a co-founder of Paparazzi and a resident of the state of Utah.

9. During all relevant times, Paparazzi and the Founders engaged in the business of purchasing, importing, marketing, warranting, distributing, and selling jewelry and accessories throughout the United States.

10. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1332.

11. Venue is proper in this court under 28 U.S.C. § 1391(b)(2).

## GENERAL ALLEGATIONS

### The Paparazzi Pyramid Scheme

12. Paparazzi is a multi-level marketing company that sells jewelry and accessories.

13. Paparazzi relies on a network of salespeople, also known as "Consultants," to sell its jewelry and accessories.

14. Paparazzi also relies on its Consultants to recruit and retain individuals to operate as other Consultants.

15. Paparazzi's business model is heavily, if not entirely, dependent on recruiting and retaining individuals to operate as Consultants for Paparazzi.

16. For this reason, Paparazzi compensates and incentivizes its Consultants to recruit additional Consultants who in turn, recruit additional Consultants.

17. Under Paparazzi's compensation structure, Consultants must recruit other individuals into Paparazzi before they are eligible to receive the vast majority of bonuses, commissions, or other compensation.

18. The following is a copy of Paparazzi's compensation plan:

| RANK | Consultant | Star Consultant | Director | Premier Director | Executive Director | Producer | Premier Producer | Executive Producer | Fashionista | A-Lister | Maven A-Lister | Jetsetter | Luxe Jetsetter ★ | Impressionista ★ |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Personal Volume (PV) Requirement | | 50 PV | 50 PV | 100 PV | 100 PV | 100 PV | 100 PV | 100 PV | 100 PV | 100 PV | 100 PV | 100 PV | 250 PV | 250 PV |
| Organizational Volume (OV) Requirement | | | | 3,000 OV** | 6,000 OV** | 12,000 OV** | 25,000 OV** | 40,000 OV** | 75,000 OV** | 180,000 OV** | 250,000 OV** | 500,000 OV** | 1,000,000 OV† | 1,600,000 OV† |
| Organizational Requirement | | | | 3 Personally Sponsored Active Consultants★ | 3 Personally Sponsored Active Consultants★ | 3 Personally Sponsored Active Consultants★ | 3 Personally Sponsored Active Consultants★ | 3 Personally Sponsored Active Consultants★ | 3 Personally Sponsored Active Consultants★ | 3 Personally Sponsored Active Consultants★ | 3 Personally Sponsored Active Consultants★ | 3 Personally Sponsored Active Consultants★ | 3 Personally Sponsored Active Consultants★ | 3 Personally Sponsored Active Consultants★ |
| Retail | ● | ● | ● | ● | ● | ● | ● | ● | ● | ● | ● | ● | ● | ● |
| Show Rebate | ● | ● | ● | ● | ● | ● | ● | ● | ● | ● | ● | ● | ● | ● |
| BBB | | ● | ● | ● | ● | ● | ● | ● | ● | ● | ● | ● | ● | ● |
| Unilevel 1 | | 5% | 10% | 10% | 10% | 10% | 10% | 10% | 10% | 10% | 10% | 10% | 10% | 10% |
| Unilevel 2 | | | 5% | 5% | 5% | 5% | 5% | 5% | 5% | 5% | 5% | 5% | 5% | 5% |
| Unilevel 3 | | | | 5% | 5% | 5% | 5% | 5% | 5% | 5% | 5% | 5% | 5% | 5% |
| Generation 1 | | | | | 7% | 3% | 3% | 3% | 3% | 3% | 3% | 3% | 3% | 3% |
| Generation 2 | | | | | | | 7% | 3% | 3% | 3% | 3% | 3% | 3% | 3% |
| Generation 3 | | | | | | | | 3% | 3% | 3% | 3% | 3% | 3% | 3% |
| Legacy 1 | | | | | | | | | | 1% | 2% | 2% | 2% | 2% |
| Legacy 2 | | | | | | | | | | | 1% | 2% | 2% | 2% |
| Legacy 3 | | | | | | | | | | | | 1% | 2% | 2% |
| Infinity Bonus | | | | | | | | | | | | | 0.5% | 1% |

● =Eligible

● =To be Active, a Consultant must purchase a minimum of 50 PV within the commission period.

●● =Indicates that no more than 1/3 of the required OV can be generated by one leg of the Consultants organization as it pertains to rank qualification.

† =Indicates that no more than 3/4 of the required OV can be generated by one leg of the Consultants organization as it pertains to rank qualification.

★ =Rank qualifications must be met for two consecutive commission periods (calendar months) before rank is issued and available bonuses are paid.

1 ITEM = 2 PV

## Personal Volume (PV)

The Paparazzi Compensation plan uses points instead of dollars when determining commissions earned. Each standard Paparazzi accessory has a point value of 2 PV attached to it (i.e. one necklace equals 2 PV).

## Retail Profit

As a Paparazzi Independent Consultant, you are able to purchase inventory for your shows or parties at wholesale pricing, and sell that same inventory at the suggested full retail price. This gives you an immediate 45% commission or profit on all jewelry sold at these events.



Purchase item from Paparazzi at Wholesale + Sell to your Customer at Retail = Instant Profit

You will also receive Retail Profit on all inventory purchased by your personally sponsored customers through your replicated websites. All Retail Profit earned will be calculated and processed once a month and paid through the regularly scheduled commission runs.

## Show Rebate

For those Independent Consultants who do larger shows, Paparazzi rewards you! When a Consultant purchases 1000 PV or more on a single order, a Show Rebate of 10% is processed and included in that month's commission check.

## Business Building Bonus (BBB)

Every time you personally sponsor or enroll a new Independent Consultant into Paparazzi you will earn 15% of their initial Starter Kit purchase (PV) as long as you are active.

## Unilevel Bonus

Earn up to three levels of commissions on your team of Consultants as you progress through the Paparazzi Ranks and Compensation Plan. Earn between 5% and 10% of your organization's activities, just for supporting and training them in finding their own success.

Your first level includes all of your personally-sponsored Consultants. When your personally-sponsored Consultants sponsor new Consultants of their own, it creates your second level. You can have an unlimited number of levels within your organization by continuing this pattern. (See Rank and Bonus Chart)

## Generation Bonus

As you begin to develop stronger leadership within your team and qualify as an Executive Director or higher, you can earn additional bonus on up to three Generations of your organization. A generation begins at every Executive Director or higher and includes all Consultants down to and including the next Executive Director or higher below.

## Legacy Bonus

As an A-Lister or higher, you can earn an additional 1% to 2% on the volume generated in up to three Legacies within your organization. A Legacy is created when you become an A-Lister and it includes all Consultants down to and including the next A-Lister or higher below you. (See Rank and Bonus Chart)

## Infinity Bonus

As a Luxe Jetsetter, you can earn an additional .5% on the volume generated from your ENTIRE team down to and including the next Luxe Jetsetter or higher. This increases to 1% when you achieve the rank of Impressionista.

## Cash Bonus

When a Consultant arrives at the top ranks for the first time by maintaining the required qualifications for two consecutive months, a Cash Bonus is paid:

- Luxe Jetsetter - $25,000
- Impressionista - $50,000

19.    As set forth in the compensation plan, Paparazzi pays its Consultants according to the "level" they attain during a commissions period.

20.    In order to attain any level higher than level 2, Consultants must personally recruit at least three other active distributors.

21.    Similarly, the bonuses Consultants earn are almost entirely dependent upon their recruitment efforts. A Consultant cannot earn a "bonus," other than the retail profit and show rebate amounts, until he or she is recruiting other Consultants into the pyramid.

22.     Paparazzi's 2021 income disclosure confirms that a Consultant's right to receive compensation is derived primarily upon that Consultant recruiting other individuals into the pyramid as opposed to selling Paparazzi's jewelry.

23.     The average "monthly bonus" for a level-1 Consultant and level-2 Consultant is only $12.49 and $23.67 respectively. The "bonus" for these levels can be as low as $0.10.

24.     However, after recruiting at least three additional Consultants, the potential compensation increases dramatically.

25.     At level 3, the monthly bonus is more than eight times the level-2 bonus and more than fifteen times the level-1 bonus.

26.     At level 14, the average monthly bonus is more than 6,536 times the level-2 bonus and 12,402 times than the level-1 bonus.

27.     Thus, Consultants cannot advance unless they are recruiting other individuals into the pyramid. And the advancement of a Consultant does not require that Consultant to sell Paparazzi's jewelry and accessories.

28.     Paparazzi encourages Consultants to recruit "teams" of other Consultants, promising recruiters that they will "[r]eceive bonuses as [Consultants] enroll new Consultants," which Paparazzi represents will "create a thriving residual income."

**Paparazzi Misrepresents its Products as Lead-Free and Nickel-Free**

29.     Since at least 2017, Paparazzi directly advertised to consumers and Consultants, both on its website and promotional materials, that its jewelry and accessories were "Lead-free and nickel-free."

15

30.    Paparazzi emphasized the lead-free and nickel-free nature of its jewelry and accessories to its Consultants, who are required to purchase initial packages containing a brochure and other promotional materials.

31.    Among other things, the brochure states that Paparazzi's jewelry and accessories are "Lead-free and nickel-free."

32.    Paparazzi maintained these representations through late 2021 in multiple advertising and promotional materials, some of which are included below:











33.     Additionally, in late 2021, Paparazzi represented on its website that its jewelry and accessories "meets applicable consumer safety laws and regulations in the United States."

34.     As support for its claim, Paparazzi stated that it "tests its jewelry for chemicals of concern using labs that are accepted by the United States Consumer Products Safety Commission."

35.     Paparazzi further stated that its jewelry "is required to undergo testing for compliance with California's Proposition 65, which includes testing for all heavy metals including lead, nickel, cadmium as well as phthalates."

36.     Paparazzi continued, "California's Proposition 65 is one of the most stringent consumer laws in the US, and Paparazzi's jewelry complies with Proposition 65."

37.     Paparazzi's representations and marketing materials were false.[1]

38.     In December 2021, samples of Paparazzi's jewelry and accessories were tested through a third-party testing facility, Waypoint Analytical. The test results confirmed that Paparazzi's jewelry not only contained dangerously high levels of nickel and lead, but other toxic metals such as arsenic, cadmium, and antimony.

39.     The amounts of nickel, lead, arsenic, and cadmium all exceeded the safe harbor levels under California's Proposition 65.

40.     Since the December 2021 test results, other laboratory reports have confirmed unsafe levels of known toxins in Paparazzi's jewelry and accessories, including lead, nickel, cadmium, arsenic, and mercury.[2]

---

[1] In addition to claiming that its products were "Lead-free and nickel-free," Paparazzi also represented that its products were "[p]roduced in facilities with elite standards and regulations for quality and labor." Upon information and belief, this representation was also false.

[2] https://tamararubin.com/category/paparazzi/.

41.    On or around January 9, 2022, Paparazzi removed all references from its website and promotional materials that represented its jewelry and accessories were "Lead-free and nickel-free."

42.    On or around March 3, 2022, Paparazzi removed all references from its website that represented its jewelry "complies with Proposition 65."

43.    Paparazzi induced each of the Counterclaim Plaintiffs to purchase its products, based, in part, on its representations that the products are safe and otherwise free from harmful materials such as lead and nickel.

44.    Paparazzi created a misleading impression that its jewelry and accessories were safer and of a higher quality than they actually were, which was central to Paparazzi's marketing efforts and commercial success.

45.    Indeed, wearing jewelry and accessories containing lead and nickel can cause adverse health effects.

46.    Children are particularly susceptible to suffering adverse health effects from jewelry and accessories containing toxic metals, especially if they chew or swallow toxic materials. Despite this, and knowing its jewelry and accessories contained toxic metals, Paparazzi designed and marketed several lines of jewelry and accessories specifically aimed at children, which were called the "Starlet Shimmer" collection and the "Lil Diva" line.

47.    Paparazzi sold the children's jewelry and accessories at substantially lower prices than its standard jewelry and accessories, which increased the number of products that Paparazzi introduced into interstate commerce and increased the total amount of jewelry and accessories delivered to children.

48.    Upon information and belief, Misty Kirby was substantially involved in the management of Paparazzi, its advertisements and marketing materials, and the sale of Paparazzi's products with dangerous levels of toxic metals, including lead and nickel. Upon information and belief, Misty Kirby knew of Paparazzi's false representations, knew that Paparazzi's jewelry and accessories contained toxic metals, including lead and nickel, and intentionally and recklessly disregarded those dangers to unjustly enrich Paparazzi and its Founders at the expense and safety of consumers such as Counterclaim Plaintiffs.

49.    Upon information and belief, Trent Kirby was substantially involved in the management of Paparazzi, its advertisements and marketing materials, and the sale of Paparazzi's products with dangerous levels of toxic metals, including lead and nickel. Upon information and belief, Trent Kirby knew of Paparazzi's false representations, knew that Paparazzi's jewelry and accessories contained toxic metals, including lead and nickel, and intentionally and recklessly disregarded those dangers to unjustly enrich Paparazzi and its Founders at the expense and safety of consumers such as Counterclaim Plaintiffs.

50.    Upon information and belief, Chantel Reeve was substantially involved in the management of Paparazzi, its advertisements and marketing materials, and the sale of Paparazzi's products with dangerous levels of toxic metals, including lead and nickel. Upon information and belief, Chantel Reeve knew of Paparazzi's false representations, knew that Paparazzi's jewelry and accessories contained toxic metals, including lead and nickel, and intentionally and recklessly disregarded those dangers to unjustly enrich Paparazzi and its Founders at the expense and safety of consumers such as Counterclaim Plaintiffs.

51.    Upon information and belief, Ryan Reeve was substantially involved in the management of Paparazzi, its advertisements and marketing materials, and the sale of

19

Paparazzi's products with dangerous levels of toxic metals, including lead and nickel. Upon information and belief, Ryan Reeve knew of Paparazzi's false representations, knew that Paparazzi's jewelry and accessories contained toxic metals, including lead and nickel, and intentionally and recklessly disregarded those dangers to unjustly enrich Paparazzi and its Founders at the expense and safety of consumers such as Counterclaim Plaintiffs.

52.    Based on Paparazzi's representations regarding its compensation plan and products, Counterclaim Plaintiffs paid millions of dollars to Paparazzi for jewelry and accessories, both for personal use and for resale through Paparazzi's pyramid scheme.

## FIRST CLAIM FOR RELIEF
*(Violation of Utah's Pyramid Scheme Act, Utah Code § 76-6a-1 et seq.*
*Counterclaim Plaintiffs Against Paparazzi and Founders)*

53.    Counterclaim Plaintiffs incorporate by reference each and every allegation set forth in the preceding paragraphs as though fully set forth herein.

54.    Through Paparazzi's compensation plan, Paparazzi and its founders organized and established a pyramid scheme.

55.    Paparazzi's compensation plan constitutes an unlawful pyramid scheme because Consultants' right to receive compensation is derived primarily from the introduction of other persons into Paparazzi's sales program rather than from the sale of Paparazzi's products.

56.    Counterclaim Plaintiffs each gave consideration in order to become Consultants at Paparazzi.

57.    As a result of Paparazzi's pyramid scheme, Counterclaim Plaintiffs have been damaged in an amount to be determined at trial.

58.     Counterclaim Plaintiffs are further entitled to recover all amounts they have paid to Paparazzi, which exceed $5,000,000, and their reasonable attorney fees and costs. *See* Utah Code § 76-6a-6(1).

## SECOND CLAIM FOR RELIEF
### (*Violation of Lanham Act, 15 U.S.C. § 1051 et seq.* *Counterclaim Plaintiffs Against Paparazzi and Founders*)

59.     Counterclaim Plaintiffs incorporate by reference each and every allegation set forth in the preceding paragraphs as though fully set forth herein.

60.     Paparazzi's statements and representations that its jewelry and accessories were "Lead-free and nickel-free" constitutes a false or misleading representation of fact regarding its products.

61.     Paparazzi's false and misleading representations were made in commercial advertising or promotional materials and misrepresents the true nature, characteristics, or qualities of Paparazzi's products.

62.     Paparazzi's use of false and misleading representations of fact are material and are likely to influence the purchasing decision of consumers.

63.     Paparazzi's falsely represented or misleadingly represented jewelry and accessories are advertised, promoted, sold, and distributed in interstate commerce.

64.     Paparazzi wrongfully profited from its false and misleading representations.

65.     Counterclaim Plaintiffs have been and continue to be injured by Paparazzi's false or misleading representations through the diversion of sales, reputational harm, and loss of goodwill.

66.     Having known that its representations of fact were false or misleading, Paparazzi's false and misleading representations were made in bad with and malice or reckless

indifference to Counterclaim Plaintiffs' and consumers' interests. Paparazzi's bad faith representations makes this an exceptional case under the Lanham Act.

67.     Counterclaim Plaintiffs are entitled to an award of Paparazzi's profits due to sales of the falsely represented and misleadingly represented products, any damages sustained by Counterclaim Plaintiffs, the costs of the action, and their attorney fees. *See* 15 U.S.C. § 1117.

## THIRD CLAIM FOR RELIEF
*(Violation of the California Consumer Legal Remedies Act, Cal. Civ. Code § 1750 et seq. Souza Against Paparazzi)*

68.     Souza incorporates by reference each and every allegation set forth in the preceding paragraphs as though fully set forth herein.

69.     The California Consumer Legal Remedies Act ("CLRA") prohibits deceptive practices in connection with the conduct of a business that provides goods, property, or services to consumers for personal, family, or household purposes.

70.     Paparazzi's false and misleading labeling and other policies, acts, and practices were designed to, and did, induce Souza's purchase and use of Paparazzi's jewelry and accessories.

71.     Paparazzi violated the CLRA by representing that Paparazzi's jewelry and accessories had characteristics they did not have, representing that that Paparazzi's jewelry and accessories were of a particular standard, quality, or grade, advertising Paparazzi's jewelry and accessories with no intent to sell them as advertised, and representing that Paparazzi's jewelry and accessories were supplied in accordance with prior representations when they had not been.

72.     Paparazzi profited from the sale of the falsely, deceptively, and unlawfully advertised jewelry and accessories. Therefore, Paparazzi's wrongful business practices constituted, and constitute, a continuing course of conduct in violation of the CLRA.

73.     Pursuant to the provisions of Cal. Civ. Code § 1782(a), Counterclaim Plaintiffs will provide a letter to Paparazzi to provide it with notice of its alleged violations of the CLRA, demanding that it correct such violations, and providing it with the opportunity to correct its business practices. If Paparazzi does not correct its business practices within the time allowed, Counterclaim Plaintiffs will amend this Complaint to add claims for monetary relief, including restitution, actual damages, and punitive damages under the CLRA.

### FOURTH CLAIM FOR RELIEF

*(Violation of the Texas Deceptive Trade Practices Act, Tex. Bus. & Com. Code § 17.41 et seq. Robinson Against Paparazzi)*

74.     Robinson incorporates by reference each and every allegation set forth in the preceding paragraphs as though fully set forth herein.

75.     The Texas Deceptive Trade Practices-Consumer Protection Act ("CPA") prohibits deceptive practices in connection with the conduct of a business that provides goods, property, or services to consumers for personal, family, or household purposes.

76.     Paparazzi's false and misleading labeling and other policies, acts, and practices were designed to, and did, induce Robinson's purchase and use of Paparazzi's jewelry and accessories.

77.     Paparazzi violated the CPA by representing that Paparazzi's jewelry and accessories had characteristics they did not have, representing that that Paparazzi's jewelry and accessories were of a particular standard, quality, or grade, advertising Paparazzi's jewelry and accessories with no intent to sell them as advertised, and representing that Paparazzi's jewelry and accessories were supplied in accordance with prior representations when they had not been.

78.     Paparazzi profited from the sale of the falsely, deceptively, and unlawfully advertised jewelry and accessories. Therefore, Paparazzi's wrongful business practices constituted, and constitute, a continuing course of conduct in violation of the CPA.

79.     By inducing Robison to purchase Paparazzi's products through violations of CPA, Robinson has been injured as a result of Paparazzi's violations in an amount to be determined at trial.

80.     In addition to recovery of damages and costs, Robinson is further entitled to a declaratory judgment that Paparazzi's practices violated the CPA and enjoining Paparazzi from committing further violations.

<u>**FIFTH CLAIM FOR RELIEF**</u>
(*Violation of the Idaho Consumer Protection Act, Idaho Code § 48-601 et seq.*
*Counterclaim Plaintiffs Against Paparazzi*)

81.     Carrol incorporates by reference each and every allegation set forth in the preceding paragraphs as though fully set forth herein.

82.     The Idaho Consumer Protection Act ("ICPA") prohibits deceptive practices in connection with the conduct of a business that provides goods, property, or services to consumers for personal, family, or household purposes.

83.     Paparazzi's false and misleading labeling and other policies, acts, and practices were designed to, and did, induce Carrol's purchase and use of Paparazzi's jewelry and accessories.

84.     Paparazzi violated the ICPA by representing that Paparazzi's jewelry and accessories had characteristics they did not have, representing that that Paparazzi's jewelry and accessories were of a particular standard, quality, or grade, advertising Paparazzi's jewelry and

accessories with no intent to sell them as advertised, and representing that Paparazzi's jewelry and accessories were supplied in accordance with prior representations when they had not been.

85.    Paparazzi profited from the sale of the falsely, deceptively, and unlawfully advertised jewelry and accessories. Therefore, Paparazzi's wrongful business practices constituted, and constitute, a continuing course of conduct in violation of the ICPA.

86.    By inducing Carrol to purchase Paparazzi's products through violations of ICPA, Carrol has been injured as a result of Paparazzi's violations in an amount to be determined at trial.

87.    In addition to recovery of damages and costs, Carrol is further entitled to a declaratory judgment that Paparazzi's practices violated the CPA and enjoining Paparazzi from committing further violations.

### SIXTH CLAIM FOR RELIEF
*(Violation of the Utah Consumer Sales Practices Act, Utah Code § 13-11-1 et seq.*
*Counterclaim Plaintiffs Against Paparazzi)*

88.    Counterclaim Plaintiffs incorporate by reference each and every allegation set forth in the preceding paragraphs as though fully set forth herein.

89.    The Utah Consumer Sales Practices Act seeks to "protect consumers from suppliers who commit deceptive and unconscionable sales and practices," Utah Code § 13-11-2(2), including by forbidding suppliers from representing that subject of the transaction has characteristics or benefits that it does not have, indicating that the subject is of "a particular standard, quality, grade . . . if it is not," or "promotes, offers, or grants participation in a pyramid scheme." Utah Code § 13-11-4.

90.    Paparazzi violated the Utah Consumer Sales Practices Act by, among other things, making representations and statements that led Counterclaim Plaintiffs into believing that

Paparazzi's products were "Lead-free and nickel-free" and by promoting participation in an unlawful pyramid scheme.

91.     By inducing Counterclaim Plaintiffs to purchase Paparazzi's products through violations of Utah's Consumer Sales Practices Act, Counterclaim Plaintiffs have been injured as a result of Paparazzi's violations in an amount to be determined at trial.

92.     In addition to recovery of damages and costs, Counterclaim Plaintiffs are further entitled to a declaratory judgment that Paparazzi's practices violated the Utah Consumer Sales Practices Act and enjoining Paparazzi from committing further violations.

## SEVENTH CLAIM FOR RELIEF
*(Breach of Express Warranty, Utah Code Title 70A, 15 U.S.C. §§ 2301 et seq.*
*Counterclaim Plaintiffs Against Paparazzi)*

93.     Counterclaim Plaintiffs incorporate by reference each and every allegation set forth in the preceding paragraphs as though fully set forth herein.

94.     During all relevant times, Paparazzi was a "merchant," *see* Utah Code § 70A-2-104(1), dealing in the sale of jewelry and accessories, which constitute "goods" under Utah's Uniform Commercial Code. Utah Code § 70A-2-105(1).

95.     During all relevant times, Paparazzi was a "warrantor" and "supplier," 15 U.S.C. § 2301(4)–(5), dealing in the sale of jewelry and accessories, which constitute "consumer products." 15 U.S.C. § 2301(1).

96.     As purchasers of Paparazzi's "consumer products," Counterclaim Plaintiffs are "consumers." 15 U.S.C. § 2301(3).

97.     Paparazzi expressly warranted that its jewelry and accessories were in merchantable condition and fit for the ordinary purpose for which jewelry and accessories are used. *See, e.g.*, Utah Code § 70A-2-313.

98.     Until at least December 2021, Paparazzi expressly represented and warranted that its jewelry and accessories were free of lead and nickel. Paparazzi's pervasive marketing campaign includes the warranty representations described herein, which are made on Paparazzi's websites, social media accounts, product specifications, and Paparazzi's statements to the public.

99.     Paparazzi's express warranty formed part of the basis for the bargain between Counterclaim Plaintiffs and Paparazzi.

100.    Paparazzi breached its express warranty because its jewelry and accessories are not in merchantable condition and are not fit for the ordinary purposes for which such goods are used.

101.    As a direct and proximate result of Paparazzi's breach, Counterclaim Plaintiffs purchased Paparazzi's jewelry and accessories without knowledge of their toxic contents and corresponding safety risks and without knowledge that the products could not be used for their intended purpose.

102.    As a direct and proximate result of Paparazzi's breach of express warranty, Counterclaim Plaintiffs did not receive the benefit of their bargain.

103.    Paparazzi's breach of express warranty has damaged Counterclaim Plaintiffs in an amount to be determined in trial.

### EIGHTH CLAIM FOR RELIEF
*(Breach of Implied Warranty, Utah Code Title 70A, 15 U.S.C. §§ 2301 et seq.*
*Counterclaim Plaintiffs Against Paparazzi)*

104.    Counterclaim Plaintiffs incorporate by reference each and every allegation set forth in the preceding paragraphs as though fully set forth herein.

105.    During all relevant times, Paparazzi was a "merchant," *see* Utah Code § 70A-2-104(1), dealing in the sale of jewelry and accessories, which constitute "goods" under Utah's Uniform Commercial Code. Utah Code § 70A-2-105(1).

106.    During all relevant times, Paparazzi was a "warrantor" and "supplier," 15 U.S.C. § 2301(4)–(5), dealing in the sale of jewelry and accessories, which constitute "consumer products." 15 U.S.C. § 2301(1).

107.    As purchasers of Paparazzi's "consumer products," Counterclaim Plaintiffs are "consumers." 15 U.S.C. § 2301(3).

108.    As a "warrantor" and "supplier" of "consumer products," Paparazzi impliedly warranted that its jewelry and accessories were in merchantable condition and fit for the ordinary purpose for which jewelry accessories are used. *See, e.g.*, Utah Code § 70A-2-314.

109.    The implied warranty of merchantability is part of the basis for the bargain between Counterclaim Plaintiffs and Paparazzi.

110.    Paparazzi breached the implied warranty of merchantability because its jewelry and accessories are not in merchantable condition and are not fit for the ordinary purposes for which such goods are used.

111.    As a direct and proximate result of Paparazzi's breach of the implied warranty of merchantability, Counterclaim Plaintiffs purchased Paparazzi's jewelry and accessories without knowledge of their toxic contents and corresponding safety risks and without knowledge that the products could not be used for their intended purpose.

112.    As a direct and proximate result of Paparazzi's breach of the implied warranty of merchantability, Counterclaim Plaintiffs did not receive the benefit of their bargain.

113.    Paparazzi's breach of the implied warranty of merchantability has damaged Counterclaim Plaintiffs in an amount to be determined in trial.

114.    In addition to an award of damages, Counterclaim Plaintiffs are entitled to an award of fees and costs. *See* 15 U.S.C. § 2310; *see also* Utah Code § 70A-2-714.

### NINTH CLAIM FOR RELIEF
*(Violation of California False Advertising Law, Cal. Bus. & Prof. Code § 17500 et seq. Souza Against Paparazzi and Founders)*

115.    Souza incorporates by reference each and every allegation set forth in the preceding paragraphs as though fully set forth herein.

116.    Souza is a "person" within the meaning of California's False Advertising Law (the "FAL").

117.    During the course of its business, Paparazzi violated the FAL by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding the contents and safety of its jewelry and accessories.

118.    Founders participated in Paparazzi's false advertising by participating as agents in the creation of the advertising, aiding and abetting the false advertising, and furnishing the means for Paparazzi's violations.

119.    Specifically, by misrepresenting its jewelry and accessories as "lead-free and nickel-free," and by failing to disclose, and actively concealing, that there was nickel and lead in its jewelry and accessories, Paparazzi engaged in untrue and misleading advertising.

120.    Paparazzi made or caused to be made and disseminated throughout California advertising, marketing, and other publications containing statements that Paparazzi knew, or by the exercise of reasonable care should have known, were untrue and misleading.

121.    Paparazzi's misrepresentations, concealments, omissions, and suppressions of material facts had a tendency to mislead consumers and did in fact deceive reasonable consumers and members of the public, including Counterclaim Plaintiffs, about the true nature and quality of Paparazzi's jewelry and accessories.

122.    Paparazzi's misrepresentations, concealments, omissions, and suppressions of material facts were material to Counterclaim Plaintiffs. Had they been aware of the true nature and quality of Paparazzi's jewelry and accessories, Counterclaim Plaintiffs would not have purchased the jewelry and accessories or would have paid a fraction of the actual amount charged.

123.    As a direct and proximate result of Defendant's concealment, misrepresentations, and failures to disclose, Counterclaim Plaintiffs suffered damages in an amount to be determined at trial.

124.    Counterclaim Plaintiffs are further entitled to an order enjoining Defendants from continued false advertising and any such orders or judgments as may be necessary to restore to Counterclaim Plaintiffs any money acquired by unfair competition, including restitution and/or disgorgement.

**TENTH CLAIM FOR RELIEF**
*(Fraudulent Misrepresentation – Counterclaim Plaintiffs Against Paparazzi)*

125.    Counterclaim Plaintiffs incorporate by reference each and every allegation set forth in the preceding paragraphs as though fully set forth herein.

126.    On numerous occasions between 2017 and 2021, Paparazzi represented to the Counterclaim Plaintiffs that its jewelry and accessories were "Lead-free and nickel free" through its website, advertisements, and other promotional materials.

127.    On numerous occasions between 2017 and 2021, Paparazzi represented to the Counterclaim Plaintiffs that its jewelry and accessories were "Lead-free and nickel free" through its website, advertisements, and other promotional materials.

128.    On numerous occasions between December 23, 2021, through March 3, 2022, Paparazzi represented to the Counterclaim Plaintiffs on its website that its jewelry and accessories "complies with Proposition 65."

129.    As demonstrated through multiple, subsequent laboratory results, Paparazzi's representations misrepresentations were false.

130.    Paparazzi made these misrepresentations knowing them to be false or in a reckless disregard that it had insufficient knowledge upon which to base such representations.

131.    Paparazzi misrepresented facts to the Counterclaim Plaintiffs for the purpose of inducing Counterclaim Plaintiffs to act on and rely upon Paparazzi's misrepresentations.

132.    Paparazzi, having a financial interest in the transaction and complete control over the procurement of its jewelry and accessories, was in a superior position to know or discover the falsity of its representations.

133.    Counterclaim Plaintiffs reasonably relied on Paparazzi's misrepresentations in purchasing jewelry and accessories from Paparazzi and acted without knowledge of the falsity of Paparazzi's representations.

134.    As a direct and proximate result of Paparazzi's misrepresentations, Counterclaim Plaintiffs have been damaged in an amount to be determined at trial.

135.    Counterclaim Plaintiffs are further entitled to an award of punitive damages under § 78B-8-201.

## ELEVENTH CLAIM FOR RELIEF
*(Negligent Misrepresentation – Counterclaim Plaintiffs Against Paparazzi)*

136.    Counterclaim Plaintiffs incorporate by reference each and every allegation set forth in the preceding paragraphs as though fully set forth herein.

137.    Paparazzi carelessly and negligently represented to Counterclaim Plaintiffs and the general public that its jewelry and accessories were "Lead-free and nickel-free."

138.    Paparazzi expected that members of the general public, including Counterclaim Plaintiffs, would rely on their careless and negligent representations that its jewelry and accessories were "Lead-free and nickel-free."

139.    Counterclaim Plaintiffs reasonably relied on Paparazzi's misrepresentations in purchasing jewelry and accessories from Paparazzi and acted without knowledge of the falsity of Paparazzi's representations.

140.    As a direct and proximate result of Paparazzi's misrepresentations, Counterclaim Plaintiffs have been damaged in an amount to be determined at trial.

141.    The Counterclaim Plaintiffs are further entitled to an award of punitive damages under § 78B-8-201.

## PRAYER FOR RELIEF

WHEREFORE, Counterclaim Plaintiffs pray for relief as follows:

A.  For judgment against Paparazzi and Founders in an amount to be determined at trial;

B.  For judgment declaring that Paparazzi and its Founders engaged in deceptive trade practices and enjoining Paparazzi and its Founders from engaging in further deceptive trade practices;

C.  For an award of punitive damages under applicable statutes and laws;

D.  For attorney fees and costs;

E.  For pre- and post-judgment interest; and

F.  For such and other further relief as the Court may deem just and appropriate.

## JURY DEMAND

Counterclaim Plaintiffs hereby demand a jury trial of all issues in this action triable as of right by a jury.

DATED this 15th day of August 2022.

JAMES DODGE RUSSELL & STEPHENS, P.C.

*/s/ Justin L. James*
Justin L. James
Dillon P. Olson

*Attorneys for Defendants Geraldine Souza, Jaime Robinson, and Jennifer Carrol*