Robert L. Lindholm (admitted *pro hac vice*)
NELSON MULLINS RILEY & SCARBOROUGH LLP
301 S. College Street, 23rd Floor
Charlotte, North Carolina 28202
Tel: (704) 417-3000
robert.lindholm@nelsonmullins.com

*Attorneys for Counterclaim Defendants*
(*additional counsel on signature page*)

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH, SOUTHERN DIVISION

| | |
|---|---|
| **PAPARAZZI, LLC d/b/a PAPARAZZI ACCESSORIES, LLC**, a Utah limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>**MELISSA SORENSON**, an individual; **GERALDINE SOUZA**, an individual; **KYLEE ROBINETTE**, an individual; **MORGAN FERGUSON**, an individual; **JENNIFER DYER**, an individual; **JAIME ROBINSON**, an individual; **JENNIFER CARROL**, an individual; **KIMBERLEY DREWRY**, an individual; **RENEE BURGESS**, an individual; and **JOHN AND JANE DOES I–X**,<br><br>Defendants. | **COUNTERCLAIM DEFENDANTS' MOTION TO COMPEL ARBITRATION PURSUANT TO 9 U.S.C. § 4**<br><br>Case No. 4:22-cv-00028-DN-PK<br><br>District Judge David Nuffer<br><br>Magistrate Judge Paul Kohler |

|  |  |
|---|---|
| **GERALDINE SOUZA**, an individual, **JENNIFER CARROL**, an individual, and **JAIME ROBINSON**, an individual<br><br>    Counterclaim Plaintiffs,<br>v.<br>**PAPARAZZI, LLC d/b/a PAPARAZZI ACCESSORIES, LLC**, a Utah limited liability company, **MISTY KIRBY**, an individual, **TRENT KIRBY**, an individual, **CHANI REEVE**, an individual, and **RYAN REEVE**, an individual,<br><br>    Counterclaim Defendants. |  |

Counterclaim Defendants Paparazzi, LLC ("Paparazzi"), Misty Kirby, Trent Kirby, Chantel Reeve, and Ryan Reeve (collectively "Paparazzi Parties"), by and through their undersigned counsel, respectfully submit this Motion to Compel Arbitration Pursuant to 9 U.S.C. § 4 (the "Motion").[1]

## INTRODUCTION

The claims asserted by Counterclaim Plaintiffs Geraldine Souza ("Souza"), Jennifer Carrol ("Carrol"), and Jaime Robinson ("Robinson") (collectively the "Souza Parties") are subject to binding arbitration, and, therefore, they are in the wrong forum. The Souza Parties are former independent contractors of Paparazzi—known as Consultants—who purchased accessories from

---

[1] Pursuant to the Tenth Circuit's guidance set forth in *Conrad v. Phone Directories Co.*, 585 F.3d 1376 (10th Cir. 2009), the only relief requested by the Paparazzi Parties in this motion is to compel arbitration pursuant to 9 U.S.C. § 4. The Paparazzi Parties are not currently moving to dismiss the Souza Parties' counterclaims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, but reserve their right to do so in accordance with Rule 12 and the instruction provided by the Tenth Circuit in *Conrad*. *See* 585 F.3d at 1383 n.2.

1

Paparazzi and then resold those accessories to end-consumers. Prior to becoming Consultants with Paparazzi, and as a prerequisite for doing so, the Souza Parties entered into Independent Consultant Agreements with Paparazzi that contain enforceable arbitration provisions.[2] The arbitration provisions in the Independent Consultant Agreement are broad, requiring the parties to mediate any "dispute between a Consultant and Paparazzi arising from, or relating to, the [Independent Consultant] Agreement or the rights and obligations of either party. . . . [and] [i]f the parties are unsuccessful in resolving their dispute through mediation, the dispute shall be settled totally and finally by arbitration." The Souza Parties filed their counterclaims—which arose from their status as Consultants—and never sought to mediate or arbitrate the dispute underlying those claims. Pursuant to the clear terms of the Independent Consultant Agreement, this Court is not the correct forum for the Souza Parties' counterclaims, and this Court should compel the Souza Parties to arbitrate those claims pursuant to Section 4 of the Federal Arbitration Act ("FAA"). 9 U.S.C. § 4.

## BACKGROUND

Paparazzi is a fashion accessory wholesaler founded by Misty Kirby, Trent Kirby, Chantel Reeve, and Ryan Reeve and is headquartered in St. George, Utah. (*See* Countercls. and Third-Party Compl., ECF No. 74, ¶¶ 4–9.) Paparazzi engages independent contractors to market and sell its accessories and refers to these independent contractors as "Consultants." (Reeve Aff. in Supp. of Defs' Mot. To Compel Arbitration ("Reeve Aff."), attached as **Exhibit A**, ¶ 6.)

---

[2] As Consultants, the Souza Parties are also members of a putative class of plaintiffs in the case captioned *Teske et al. v. Paparazzi et al*, 4:22-cv-00035-DN-PK, which is pending before this Court. The same parties that are Counterclaim Defendants in this case are Defendants in the *Teske* case. In the *Teske* case, the Defendants moved to compel arbitration pursuant to the same Independent Consultant Agreement and arbitration provisions that are the subject of this Motion. (*Teske*, ECF No. 67.)

2

### A. The Souza Parties Applied to Become Consultants and Agreed to be Bound by the Terms of the Independent Consultant Agreement.

Every person who becomes a Paparazzi Consultant, must first enter into an Independent Consultant Agreement, which is comprised of three documents: (1) Terms and Conditions, (2) Paparazzi Policies and Procedures, and (3) Paparazzi Compensation Plan.[3] Both the Terms and Conditions and Policies and Procedures contain arbitration provisions requiring the parties to first mediate and then arbitrate any dispute arising out of or relating to the Independent Consultant Agreement. (Reeve Aff. Ex. 1, ¶ 12; Reeve Aff. Ex. 2, § 10.3.)

When applying to become a Consultant, the applicant is directed to review the Terms and Conditions, which incorporate and contain embedded hyperlinks to the Paparazzi Policies and Procedures and Paparazzi Compensation Plan. (*See* Reeve Aff., ¶¶ 15, 17.) The applicant cannot proceed with check out, and complete the process for becoming a Consultant, unless they check a box that states they agree to the Terms and Conditions. (*See id*., ¶¶ 19–22.) Consistent with these procedures, the Souza Parties each checked the box agreeing to the Terms and Conditions thereby entering into the Independent Consultant Agreement with Paparazzi. Souza entered into the Independent Consultant Agreement and registered as a Consultant on November 9, 2017. (*See id.* ¶ 25.) Carrol agreed to the Independent Consultant Agreement and registered as a Consultant on February 7, 2019. (*See id.* ¶ 26.) Robinson agreed to the Independent Consultant Agreement and registered as a Consultant on June 23, 2019. (*See id.* ¶ 27.)

---

[3] The Paparazzi Policies and Procedures and Paparazzi Compensation Plan are incorporated into and made a part of the Terms and Conditions, and all three documents are collectively referred to as the "Independent Consultant Agreement" or "Agreement." (Reeve Aff. Ex. 1, ¶ 7.)

**B.     The Souza Parties and Other Former Paparazzi Consultants Improperly Obtained Paparazzi's Confidential Information.**

In early 2022, the Souza Parties and other former Paparazzi Consultants conspired with Defendant Melissa Sorenson ("Sorenson"), a former Paparazzi employee, to improperly obtain Paparazzi's confidential information. (*See* Compl., ECF No. 2, ¶ 12, 25–54.) In accordance with the arbitration provisions in the Independent Consultant Agreement—which expressly allow Paparazzi to bring an action in state or federal court seeking a restraining order or other injunctive relief to protect its intellectual property rights, including, but not limited to, its customer and/or Consultant lists[4]—Paparazzi brought suit against Sorenson, the Souza Parties, and a group of other former Consultants seeking an injunction to prevent these individuals from accessing its confidential information such as its customer information, Consultant lists, sales information, and Consultant commission information. (*See id.* ¶¶ 25–54.)

**C.     The Souza Parties Asserted Their Counterclaims in This Case Instead of Pursuing them in Arbitration.**

Despite agreeing to the Independent Consultant Agreement and the arbitration provisions contained therein, in response to Paparazzi's Complaint the Souza Parties asserted counterclaims against the Paparazzi Parties arising from the Souza Parties' status as Consultants and alleged misrepresentations that were made to them as Consultants. (*See* Countercls. and Third-Party Compl., ¶¶ 29–30, 52, 55.) Specifically, the Souza Parties allege that, Paparazzi mispresented the "lead-free and nickel-free nature of its jewelry and accessories to its Consultants" and that "[b]ased on Paparazzi's representations regarding its . . . products, [the Souza Parties] paid millions of dollars to Paparazzi for jewelry and accessories." (*Id.* ¶¶ 30, 52.)

---

[4] Reeve Aff. Ex. 1, ¶ 12; Reeve Aff. Ex. 2, § 10.3.

Contrary to the terms of the Independent Consultant Agreement, the Souza Parties did not attempt to mediate their dispute, did not assert their counterclaims against Paparazzi in arbitration, and instead filed their Counterclaims in this lawsuit. The Paparazzi Parties hereby submit this Motion to Compel Arbitration Pursuant to 9 U.S.C. § 4 to enforce the arbitrations provisions contained in the Independent Consultant Agreement and require the Souza Parties to bring their claims in arbitration.

## LEGAL STANDARD

The FAA enacts a "liberal federal policy favoring arbitration and the fundamental principle that arbitration is a matter of contract." *AT&T Mobility v. Concepcion*, 563 U.S. 333, 339 (2011). It permits "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration" to seek "an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. The Act thus requires courts to "place arbitration agreements on equal footing with other contracts," *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002), and to "rigorously enforce arbitration agreements according to their terms," *American Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 232 (2013). "The Act leaves no place for the exercise of discretion by a district court, but instead mandates that a district court shall direct the parties to proceed to arbitration on issues to which the arbitration agreement has been signed." *Dean Witter Reynolds v. Byrd*, 470 U.S. 213, 218 (1985).

"In deciding whether to grant a motion to arbitrate, courts must resolve 'whether the parties are bound by a given arbitration clause' and 'whether an arbitration clause in a concededly binding contract applies to a particular type of controversy.'" *Beltran v. AuPairCare*, 907 F.3d 1240, 1250 (10th Cir. 2018) (quoting *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002)). "[T]he

5

party moving to compel arbitration bears the initial burden of presenting evidence sufficient to demonstrate the existence of an enforceable agreement and the opposing party's failure, neglect, or refusal to arbitrate; if it does so, the burden shifts to the nonmoving party to raise a genuine dispute of material fact regarding the existence of an agreement or the failure to comply therewith." *BOSC, Inc. v. Bd. of Cnty. Commissioners of Cnty. of Bernalillo*, 853 F.3d 1165, 1177 (10th Cir. 2017) (quotations omitted). However, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983).

## ARGUMENT

### I. THE SOUZA PARTIES ARE BOUND BY THE INDEPENDENT CONSULTANT AGREEMENT.

The Court should grant the Motion because the Souza Parties are bound by the Independent Consultant Agreement and the arbitration provisions contained therein. When deciding a motion to compel arbitration, the court must first determine whether the parties are bound by an arbitration clause. *See Beltran*, 907 F.3d at 1250. To make this determination, courts apply ordinary state-law principles that govern the formation of contracts. *Jacks v. CMH Homes, Inc.*, 856 F.3d 1301, 1304 (10th Cir. 2017). "Under Utah law, a binding contract is formed if there is mutual assent between the parties supported by consideration." *Baker v. Comcast Corp.*, No. 2:19-CV-00652, 2020 WL 3895411, at *2 (D. Utah July 10, 2020) (unpublished).

The Independent Consultant Agreement that is the subject of this dispute is commonly known as a clickwrap agreement. "Clickwrap agreements 'require a user to agree to the terms and conditions before using a website or application—for example, clicking a box stating, "I agree" to

6

the terms of use,' and they are generally enforceable agreements." *Penhall v. Young Living Essential Oils*, LC, 2:20-cv-00617-DBB-CMR, 2022 WL 15504063, at *4 (D. Utah Oct. 27, 2022) (unpublished) (quoting *Route App, Inc. v. Heuberger*, No. 2:22-cv-291, 2022 WL 2316377, at *3 (D. Utah June 28, 2022) (unpublished)). Clickwrap agreements "have routinely been upheld." *Hancock v. Am. Tel. & Tel. Co.*, 701 F.3d 1248, 1256 (10th Cir. 2012).

The Independent Consultant Agreement includes an arbitration provision in both the Terms and Conditions and the Policies and Procedures. The Terms and Conditions state:

> In the event of a dispute between a Consultant and Paparazzi arising from, or relating to, the Agreement or the rights and obligations of either party, the parties shall attempt in good faith to resolve the dispute through nonbinding mediation as more fully described in the Policies and Procedures. . . . If the parties are unsuccessful in resolving their dispute through mediation, the dispute shall be settled totally and finally by arbitration as more fully described in the Policies and Procedures.

(Reeve Aff. Ex. 1, ¶ 12.) The Paparazzi Policies and Procedures state the same:

> Any dispute or claim arising from or relating to the Agreement (including these Policies and Procedures), or any other claim or grievance against Paparazzi in any form whatsoever, including but not limited to, economic losses, personal injury, property damage, will be subject to mediation at Paparazzi's corporate address using a neutral mediator of Paparazzi's choosing. In the event that Paparazzi and the Independent Consultant are unable to resolve their dispute through mediation, Paparazzi and the Independent Consultant will be subject to final and binding arbitration to be held in Salt Lake City, Utah.

(Reeve Aff. Ex. 2, § 10.3.)

The Souza Parties assented to the Independent Consultant Agreement, including the arbitration provisions contained therein, when they applied to become Consultants and affirmatively checked the box stating that they agreed to the Terms and Conditions, which also incorporated the Policies and Procedures. (*See* Reeve Aff., ¶¶ 19–27.) Moreover, the Independent Consultant Agreement is supported by consideration because in return for the Souza Parties

7

agreeing to be bound by the Terms and Conditions and Policies and Procedures, they were able to become Consultants and purchase Paparazzi goods for resale.

Accordingly, the Souza Parties entered into an agreement with Paparazzi in the form of the Independent Consultant Agreement, and therefore are bound by the terms contained therein, which include the arbitration provisions set forth in the Terms and Conditions and Policies and Procedures.

## II. THE SOUZA PARTIES' COUNTERCLAIMS ARE SUBJECT TO MANDATORY ARBITRATION PURSUANT TO THE ARBITRATION PROVISIONS IN THE INDEPENDANT CONSULTANT AGREEMENT.

The second and final question the court must determine in ruling on a motion to compel arbitration is whether the arbitration clause applies to the Souza Parties' claims. *See Beltran*, 907 F.3d at 1250. Here, each claim asserted by the Souza Parties in this action must be submitted to binding arbitration in accordance with the FAA.

"[R]ecognizing there is some range in the breadth of arbitration clauses, a court should classify the particular clause as either broad or narrow." *Sanchez v. Nitro-Life Technologies, L.L.C.*, 762 F.3d 1139, 1146 (10th Cir. 2014.) "Where the arbitration clause is broad, there arises a presumption of arbitrability and arbitration of even a collateral matter will be ordered if the claim alleged implicates issues of contract construction or the parties' rights and obligations under it." *Id.*

"Many courts have concluded that an arbitration clause applying to disputes 'arising under' or 'in connection with' the agreement constitutes a broad arbitration clause." *Id.* at 1146–47; *see also Brown v. Coleman Co.*, 220 F.3d 1180, 1184 (10th Cir. 2000) (arbitration clause stating "all disputes or controversies arising under or in connection with this Agreement will be settled

exclusively by arbitration" was "the very definition of a broad arbitration clause"); *P & P Indus., Inc. v. Sutter Corp.*, 179 F.3d 861, 871 (10th Cir. 1999) (arbitration clause covering "'[a]ny controversy, claim, or breach *arising out of or relating to* this Agreement' . . . is a 'broad' one"); *Collins & Aikman Prods. Co. v. Bldg. Sys., Inc.*, 58 F.3d 16, 20 (2d Cir. 1995) (the phrase "'[a]ny claim or controversy arising out of or relating to th[e] agreement,' is the paradigm of a broad clause").

Consistent with the authority cited above, the arbitration provisions at issue here are appropriately categorized as broad. The arbitration provision set forth in the Terms and Conditions applies to any dispute "between a Consultant and Paparazzi *arising from, or relating to*, the Agreement or the rights and obligations of either party," and it further states that any dispute not settled through mediation must be settled "totally and finally by arbitration." (Reeve Aff. Ex. 1, ¶ 12 (emphasis added).) The arbitration provision in the Paparazzi Policies and Procedures similarly applies to "any dispute or claim *arising from or relating to* the Agreement . . . or any other claim or grievance against Paparazzi in any form whatsoever." (Reeve Aff. Ex. 2, § 10.3 (emphasis added).)

As previously stated, the FAA reflects a strong policy favoring arbitration. The Tenth Circuit has held that "the strong presumption in favor of arbitrability applies with even greater force when such a broad arbitration clause is at issue." *P & P Indus.*, 179 F.3d at 871 (quotations omitted). Here, the Souza Parties make clear in their Counterclaims and Third-Party Complaint that their claims stem from alleged misrepresentations that Paparazzi made to the Souza Parties in their capacity as Consultants and the requirement that the Souza Parties purchase Paparazzi products that were the subject of those misrepresentations to become Consultants and be eligible

9

to sell Paparazzi products to end-consumers. Indeed, the central allegations underlying their dispute with Paparazzi are that Paparazzi mispresented the "lead-free and nickel-free nature of its jewelry and accessories to its Consultants, who were required to purchase initial packages. . ." and that "[b]ased on Paparazzi's representations regarding its . . . products, [the Souza Parties] paid millions of dollars to Paparazzi for jewelry and accessories." (Countercls. and Third-Party Compl., ¶¶ 30, 52.)

Given the breadth of the applicable arbitration provisions, the fact that all of the Souza Parties' counterclaims arise from their status as Consultants and their contractual relationship with Paparazzi through the Independent Consultant Agreement, as well as the strong policy articulated by the FAA in enforcing arbitration provisions, The Souza Parties' Counterclaims are subject to mandatory arbitration.[5]

## **CONCLUSION**

For the foregoing reasons, the Paparazzi Parties respectfully request that this Court grant their Motion to Compel Arbitration Pursuant to 9 U.S.C. § 4.

[*signatures on next page*]

---

[5] The fact that the Paparazzi Parties are moving to compel counterclaims to arbitration rather than claims asserted in an initial complaint does not have any bearing on this analysis. Courts in the Tenth Circuit have routinely compelled arbitration of counterclaims. *See, e.g.*, *Brooke Credit Corp. v. Buckeye Ins. Ctr.*, 563 F. Supp. 2d 1205, 1207 (D. Kan. 2008); *Allianz Life Ins. Co. of N. America v. Richards*, No. 05-CV-0256 JCH/RLP, 2006 WL 8443844, at *3 (D.N.M. Sept. 14, 2006) (unpublished); *Collectacheck, Inc. v. Check Collection & Recov., Inc.*, No. 09-cv-00186-DME-KMT, 2009 WL 2475192, at *1–2 (D. Colo. Aug. 11, 2009) (unpublished).

Respectfully submitted this 8th day of February, 2023.

**NELSON MULLINS RILEY & SCARBOROUGH LLP**

By: */s/* Robert L. Lindholm

Robert L. Lindholm (admitted *pro hac vice*)
One Wells Fargo Center
301 South College Street, 23rd Floor
Charlotte, NC 28202
(704) 417-3000
robert.lindholm@nelsonmullins.com

Matthew G. Lindenbaum (*pro hac vice* forthcoming)
One Financial Center, Suite 3500
Boston, MA 02111
(617) 217-4700
matthew.lindenbaum@nelsonmullins.com

Wesley T. Moran (admitted *pro hac vice*)
3751 Robert M. Grissom Parkway
Myrtle Beach, SC 29577
(843) 946-5686
wes.moran@nelsonmullins.com

Tammy Berkhoudt
201 17th Street NW
Atlanta, GA 30363
(404) 322-6036
tammy.berkhoudt@nelsonmullins.com

**BUCHALTER, P.C.**

Douglas P. Farr
Jacob D. Barney
111 South Main Street, Suite 600
Salt Lake City, UT 84111
(801) 401-8688
dfarr@buchalter.com
jbarney@buchalter.com

Anne Marie Ellis (admitted *pro hac vice*)

11

        18400 Von Karman Ave. Suite 800
Irvine, CA 92612
(949) 224-6223
aellis@buchalter.com

*Attorneys for Counterclaim Defendants*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 8th day of February, 2023 I caused a true and correct copy of the foregoing instrument to be served on all counsel of record via the Court's CM/ECF system.

/s/Robert L. Lindholm
Robert L. Lindholm