Justin L. James (15167)
Dillon P. Olson (16120)
JAMES DODGE RUSSELL & STEPHENS, P.C.
10 West Broadway, Suite 400
Salt Lake City, Utah 84101
Telephone: 801.363.6363
Email:  jjames@jdrslaw.com
        dolson@jdrslaw.com

*Attorneys for Defendants Geraldine Souza, Jaime Robinson, and Jennifer Carrol*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF UTAH

| | |
|---|---|
| PAPARAZZI, LLC d/b/a PAPARAZZI ACCESSORIES, LLC, a Utah limited liability company,<br><br>*Plaintiff*,<br><br>v.<br><br>MELISSA SORENSON, an individual, GERALDINE SOUZA, an individual, KYLEE ROBINETTE, an individual, MORGAN FERGUSON, an individual, JENNIFER DYER, an individual, JAIME ROBINSON, an individual, JENNIFER CARROL, an individual, KIMBERLY DREWRY, an individual, RENEE BURGESS, an individual, and JOHN AND JANE DOES I-X.<br><br>*Defendants*. | **OPPOSITION TO COUNTERCLAIM DEFENDANTS' MOTION TO COMPEL ARBITRATION**<br><br>Case No. 4:22-cv-00028-DN-PK<br><br>District Judge David Nuffer<br><br>Magistrate Judge Paul Kohler |

| | |
|---|---|
| GERALDINE SOUZA, an individual, JENNIFER CARROL, an individual, and JAIME ROBINSON, an individual, <br><br> *Counterclaim Plaintiffs*, <br><br> v. <br><br> PAPARAZZI, LLC d/b/a PAPARAZZI ACCESSORIES, LLC, a Utah limited liability company, MISTY KIRBY, an individual, TRENT KIRBY, an individual, CHANI REEVE, an individual, and RYAN REEVE, an individual <br><br> *Counterclaim Defendants*. | |

Geraldine Souza, Jennifer Carrol, and Jaime Robinson (collectively the "Counterclaim Plaintiffs"), by and through counsel of record, hereby oppose the Motion to Compel Arbitration Pursuant to 9 U.S.C. § 4 (the "Motion") submitted by Paparazzi, LLC d/b/a Paparazzi Accessories, LLC ("Paparazzi"), Misty Kirby, Trent Kirby, Chani Reeve, and Ryan Reeve (collectively the "Counterclaim Defendants").

## **INTRODUCTION**

Paparazzi's Motion is belied by its prior conduct in this lawsuit. In seeking to compel arbitration, Paparazzi forgets that it initiated this lawsuit, waiving any right to arbitration. The Motion further ignores that in suing Counterclaim Plaintiffs, Paparazzi relied upon and asserted claims under Paparazzi's Terms and Conditions and Policies and Procedures. Paparazzi's contention that the Terms and Conditions and/or Policies and Procedures contain "mandatory arbitration provisions" falls flat. Based on Paparazzi's past conduct, Paparazzi did not believe that arbitration was "mandatory" when it filed its claims nearly a year ago. It did not believe that

arbitration was mandatory when it sought to consolidate this case into other lawsuits against Paparazzi. And it did not claim arbitration was mandatory when it attempted to sever Counterclaim Plaintiff's claims. Only after losing on its efforts and after a year of litigating this case does Paparazzi now claim that there is a mandatory arbitration provision. Any arbitration right that Paparazzi had has undoubtedly been waived.

Even absent waiver, Paparazzi does not have an enforceable right to compel arbitration. What Paparazzi calls an "alternative dispute resolution," is, in reality, a deliberately convoluted process that would require Counterclaim Plaintiffs to bear prohibitive costs—including traveling to Utah twice and the risk of paying Paparazzi's legal fees—in order to exercise their statutory and due process rights against Paparazzi and its founders. These one-sided, unconscionable burdens prevent Counterclaim Plaintiffs (and numerous other parties) from even accessing arbitration and render the entire dispute resolution provision substantively unconscionable. Paparazzi's mediation and arbitration provision is not an acceptable process of alternative dispute resolution—it is bullying intended to immunize the Paparazzi enterprise from tortious and unlawful activity.

This Court should deny the Motion. Paparazzi has delayed this case far too long and Counterclaim Plaintiffs have been hamstrung in challenging Paparazzi's claims.

**BACKGROUND**

A. Paparazzi incentivizes Counterclaim Plaintiffs to sell products laced with toxic contaminants.

Paparazzi, a multilevel-marketing company, used a nationwide network of sellers to sell cheap jewelry and accessories that contained dangerously high levels of toxic contaminants. Through a system of incentives, commissions, and other awards, Paparazzi induced its "Consultants" to purchase low-budget jewelry and accessories to sell to their friends, neighbors,

family members, coworkers, and others. Paparazzi represented that its accessories were "lead and nickel free" and in compliance with state rules limiting the amount of dangerous toxins in consumer products. But testing revealed that the accessories contain astonishingly high levels of lead, nickel, cadmium, and/or other toxic metals that pose health risks to Consultants and their customers.

Paparazzi raked in massive profits from these sales, sticking Consultants with what proved to be worthless, potentially dangerous products. Plaintiffs Teske and Franklin are Paparazzi Consultants who, together, have over $16,000 worth of unsold Paparazzi inventory. Unwilling to sell harmful products to anyone, Plaintiffs filed this action on behalf of themselves and a proposed class of Consultants to recover money damages for the harms Paparazzi caused through its misrepresentations about the safety of Paparazzi products.[1]

B. Paparazzi initiates litigation in this forum and participates in proceedings.

Paparazzi filed this action on April 25, 2022.[2] In addition to seeking injunctive relief, Paparazzi asserted seven causes of action for independent relief, including causes of action for breaches of Paparazzi's Terms and Conditions and Policies and Procedures.[3] During all relevant times, Paparazzi has litigated in this forum, working with Counterclaim Plaintiffs to submit the Attorney Planning Meeting Report and stipulate to a litigation schedule.[4] Paparazzi did not indicate any intention to arbitrate, even though the Attorney Planning Meeting Report expressly references arbitration and mediation.[5] Paparazzi has also participated in scheduling conferences to discuss

---

[1] Answer and Counterclaim (Dkt 75).
[2] Complaint (Dkt.2)
[3] Amended Complaint (Dkt. 35) at ¶¶ 113–123
[4] Attorney Planning Report (Dkt. 44)
[5] *Id.* at ¶ 6.

case management, and has also sought affirmative relief from this Court in the form of severance and consolidation, which relief was denied.

Only after having failed to obtain its requested relief from this Court did Paparazzi reverse course. In a January 6, 2023 letter, it claimed, for the first time, that Counterclaim Plaintiffs must resolve their claims through mediation and arbitration. Paparazzi purported to invoke Section 12 of its Terms and Conditions, which provides that the parties shall attempt nonbinding mediation, and if those efforts are unsuccessful, "the dispute shall be settled totally and finally by arbitration," "as more fully described in" the "Policies and Procedures." The Policies and Procedures set forth the painstaking and burdensome process Consultants apparently must use to exercise their due process rights. First the Consultant must travel to St. George (at his or her expense) for a mediation before a mediator "of Paparazzi's choosing." After an unsuccessful mediation, the Consultant would have to travel to Salt Lake City (again at his or her expense) for an arbitration before an arbitrator selected by Paparazzi, an arbitrator selected by the Consultant (and paid by him or her), and a third arbitrator (who must be an attorney) to be selected by the two arbitrators under an unknown process. The Consultant would be responsible for half of the third arbitrator's fees, and if he or she is unsuccessful, all of Paparazzi's costs and fees, including attorneys' fees. Additionally, the Policies and Procedures are one-sided, as Paparazzi reserves the right to sue for injunctive relief but a Consultant is not provided any similar opportunity.

Counterclaim Plaintiffs responded that Paparazzi had waived its right to arbitrate and that the arbitration provision was unenforceable. Paparazzi's motion followed.

# ARGUMENT

## I. Paparazzi Waived Any Right to Arbitrate.

"It is axiomatic that the right to arbitration, like any other contract right, can be waived."[6] To determine whether a party has waived the right to arbitrate, courts seek to determine whether the party has "participated in litigation to a point inconsistent with the intent to arbitrate" and whether "the opposing party has been prejudiced as a result."[7] Regardless of any policies favoring arbitration, "it is well settled that a party may not play fast and loose with the judicial machinery and deceive the courts."[8]

Paparazzi has, during all relevant times, acted inconsistently with an intention to arbitrate. Acts inconsistent with the intent to arbitrate including making "requests of the court [that] demonstrate an intent to pursue litigation."[9] At the outset, Paparazzi initiated this action in this forum on April 25, 2022.[10] Paparazzi was obviously aware of its Policies and Procedures and its provisions before it initiated this lawsuit, as it expressly referenced them in its Complaint.[11] It even expressly reference the arbitration provision in its amended complaint, which it filed on May 17, 2022.[12] And although the arbitration provision purports to allow Paparazzi to seek injunctive relief outside of arbitration, Paparazzi did not limit its complaint to injunctive relief. Instead, in addition to its cause of action seeking injunctive relief, Paparazzi initially asserted five independent causes

---

[6] *In re Cox Enters., Inc. Set-top Cable Television Box Antitrust Litig.*, 790 F.3d 1112, 1115–16 (10th Cir. 2015).
[7] *ASC Utah, Inc. v. Wolf Mtn. Resorts, LC*, 2010 UT 65, ¶ 29, 245 P.3d 184.
[8] *In re Cox*, 790 F.3d at 1116.
[9] *ASC Utah, Inc.*, 245 P.3d at 194.
[10] *See* Complaint (Dkt. 2).
[11] *Id.* at ¶ 14 ("The relationship between Paparazzi and its Consultants is governed by Paparazzi's Policies and Procedures.")
[12] Amended Complaint (Dkt. 35) at ¶ 22

of action, including claims for breach of contract, breach of the implied covenant of good faith and fair dealing, intentional interference with economic advantage, civil conspiracy, and violation of the federal fraud and computer abuse act.[13] Paparazzi then amended its complaint to include seven causes of action independent from its request for injunctive relief, ***including claims for breach of contract under the same agreements through which Paparazzi now seeks to compel arbitration***.[14]

Paparazzi should not be permitted to compel Counterclaim Plaintiffs to pursue their counterclaims, which share many common facts with their affirmative defenses, in arbitration after Paparazzi has waived its right to arbitration by pursuing claims for alleged violations of the Policies and Procedures and Terms and Conditions before this Court.[15] Such an outcome would create inefficiencies by duplicating proceedings, inflict undue burden and expense by unnecessarily creating multiple proceedings, risk inconsistent determinations, and deprive Counterclaim Plaintiffs of due process by allowing Paparazzi to present its claims to a jury without providing Counterclaim Plaintiffs the same opportunity.

Additionally, Counterclaim Plaintiffs' counterclaims have been pending since August 15, 2022.[16] Paparazzi has no explanation for its more than six-month delay in seeking to compel arbitration. Prior to filing the Motion, rather than seeking to compel arbitration, Paparazzi attempted to consolidate five separate cases "into one case ***in this court***."[17] Paparazzi later filed a

---

[13] *See* Complaint (Dkt. 2); *see also* Amended Complaint (Dkt. 35); Attorney Planning Report (Dkt. 44) setting a discovery schedule on Paparazzi's claims and Defendants' affirmative defenses after the Court's decision on the application for an injunction.
[14] Amended Complaint (Dkt. 35) at ¶¶ 113-123.
[15] *Id.*
[16] Answer and Counterclaim (Dkt. 75)
[17] Motion to Consolidate (Dkt. 88).

7

Motion to Sever, in which Paparazzi sought to "sever all eleven counterclaims" "into a new case" ***before*** this Court.[18] Paparazzi specifically represented that its purpose for seeking severance was for "***the Court*** to decide all of the misrepresentations claims together in one proceeding."[19] In over 125 docket entries and nearly a year of litigation, not once did Paparazzi state, imply, hint-at or otherwise give any indication that it desired to arbitrate the issues pending before the Court.

If Paparazzi believed that the counterclaims were asserted in the wrong forum, it should have sought to compel arbitration before it filed this lawsuit, before it engaged in a discovery plan, before it sought to consolidation, before it sought to sever, and well before February 2023—10 months after Paparazzi initiated this lawsuit. Instead, only after it lost on all of its other efforts to challenge the counterclaims (delaying these proceedings) did Paparazzi seek to compel arbitration, causing further delay.

Finally, Paparazzi's intent to litigate this case is also apparent from its active participation in the day-to-day business of litigation in this forum. Paparazzi attended case management and scheduling conferences and submitted an Attorney Planning Report and proposed scheduling order that made no mention of its intent to arbitrate, even though the report itself prompts the parties to address ADR.[20] Indeed, the Attorney Planning Report specifically recognized that the "Parties jointly proposed to the court" a "discovery plan" that allowed for discovery on "Defendants' affirmative defenses ***and counterclaims,*** including [Paparazzi's] compensation system, [Paparazzi's] compliance with its own policies and procedures, [Paparazzi's] representation to Defendants (and others similarly situated) regarding its products and the accuracy of those

---

[18] Motion to Sever (Dkt. 102) at p. 2-4.
[19] Reply in Support of Motion to Sever (Dkt 115) (emphasis added).
[20] Attorney Planning Report (Dkt. 44).

representations."[21] After discussing the "Discovery Plan" the Parties specifically addressed alternative dispute resolution, indicating only that "the Parties intend[ed] to engage in private dispute resolution for: **Mediation**"—no mention of arbitration.[22] The parties further acknowledged that the claims and counterclaims would be tried by a jury—not a panel of arbitrators.[23] Courts regularly find that these actions establish an intent to litigate outside of arbitration.[24]

Paparazzi's actions have prejudiced Counterclaim Plaintiffs. While "any real detriment is sufficient to support a finding of prejudice,"[25] courts find prejudice where the opposing party experiences "inherent unfairness—in terms of delay, expense, or damage to a party's legal position."[26] Counterclaim Plaintiffs suffered expense and delay due to Paparazzi's request to seek severance and consolidation, which effectively stayed this litigation and prevented the parties from moving forward on their respective claims. Additionally, Counterclaim Plaintiffs suffered detriment to their legal position because they would have acted differently had Paparazzi made its intent to seek arbitration known from the beginning. Paparazzi's delay affected fundamental

---

[21] *Id.* at § 2.
[22] *Id.*
[23] *Id.* at § 7.
[24] *See, e.g.*, *Smile Inc. Asia Pte. Ltd. v. BriteSmile Mgmt., Inc.*, 122 P.3d 654, 659 (Utah Ct. App. 2005) (finding defendant participated in the litigation and waived its right to arbitrate by filing scheduling motions and communicating with the court and opposing counsel about issues related to litigation); *Strong v. Cochran*, No. 2:14-cv-788-TC, 2017 WL 1909168, at *3 (D. Utah May 9, 2017) (finding waiver where party did not raise arbitration "when the parties negotiated a scheduling order," "participated in a pre-trial conference," and waited "months before saying anything"), *aff'd sub nom. Strong v. Davidson*, 734 Fed. App'x 578 (10th Cir. May 2018).
[25] *Chandler v. Blue Cross Blue Shield Utah*, 833 P.2d 356, 360 (Utah 1992),
[26] *Strong*, 743 Fed. App'x at 583

questions of strategy, including how Counterclaim Plaintiffs would move forward with its claims and defenses, and when.[27]

Paparazzi has waived its right to block Counterclaim Plaintiffs' access to this Court by asserting affirmative claims against Counterclaim Plaintiffs in this Court, including claims pursuant to the Policies and Procedures and Terms and Conditions that Paparazzi attempts to enforce through the Motion, by fully litigating this action for close to a year, and by prejudicing Counterclaim Plaintiffs through months of delay and wasted resources.

## II. The Arbitration Provision at Issue is Unenforceable.

The arbitration provision that Counterclaim Defendants reference under the Terms and Conditions and Policies and Procedures (the "Provision") would impose prohibitive costs on Counterclaim Plaintiffs, limit their legal rights, and justify one-sided rights of Paparazzi relating to arbitration. The impacts and disparity of rights permeate the entire arbitration clause, rendering it unenforceable.

### A. The Provision Prevents Counterclaim Plaintiffs From Accessing the Arbitral Forum.

Courts in this Circuit have long invalidated arbitration agreements that impose fees and costs "so high as to make access to the forum impracticable."[28] Paparazzi's arbitration provision would do just that.

---

[27] *See Strong*, 743 Fed. App'x at 582 (finding defendant waived their right to arbitrate because their "passive approach" misled other parties who "might have acted differently had he known Mr. Davidson still intended to pursue arbitration."); *Calero v. CoreCivic, Inc.*, No. CV 20-1015, 2020 WL 7773393, at *1 (D.N.M. Dec. 30, 2020) (unpublished) (finding a four month delay of discovery "threatens to become unfairly prejudicial to Plaintiff due to, inter alia, fading memories and increased difficulty in locating witnesses and documents.").

[28] *Am. Express Co.*, 570 U.S. at 236; *see, e.g.*, *Nesbitt*, 811 F.3d at 379–81(affirming denial of defendant's motion to compel arbitration where arbitration agreement required plaintiff to bear their costs of arbitration such that the cost of accessing the arbitral forum was impracticable, even

Counterclaim Plaintiffs cannot afford to arbitrate under Paparazzi's Provision, which would require Counterclaim Plaintiffs to travel from California, Idaho, and Texas to Paparazzi's home state of Utah twice (once for mediation and again for arbitration), bear half of the costs for ***three*** arbitrators, and face potential liability for Paparazzi's fees and costs even though the counterclaims are not based in contract. Faced with these provisions, no rational person would begin the arbitration process, "especially when the worst-case scenario would mean not only losing on their substantive claims but also the imposition of the costs of the arbitration."[29] Courts routinely refuse to enforce provisions whose practical effect is to price parties out of participating in arbitration.[30]

That is the case here. On average, 92% of Paparazzi's distributors made less than $200/month from Paparazzi.[31] Less than 5% of Paparazzi's distributors averaged over

---

where plaintiff could have opted out of arbitration or sought reduced arbitration fees); *Shankle*, 163 F.3d at 1233–35 (holding arbitration agreement unenforceable because it prevented plaintiff from vindicating his rights by requiring him to pay half the arbitrator's fees, which he could not afford).

[29] *Nesbitt*, 811 F.3d at 379 (citation omitted).

[30] *See, e.g.*, *Sanchez v. Nitro Lift Techs., L.L.C.*, 91 F. Supp. 3d 1218 (E.D. Okla. 2015) (holding unenforceable arbitration provision requiring employees to travel from Oklahoma to Houston, Texas for arbitration because such cost-prohibitive travel would deter a substantial number of similarly situated potential litigants); *see also Owner-Operator Indep. Drivers Ass'n*, 325 F. Supp. 2d at 1263–64 (refusing to enforce an arbitration agreement that would have required plaintiffs to proceed with "an expensive arbitration proceeding in a distant and inconvenient forum."); *CMH Homes, Inc. v. Sexton*, 441 F. Supp. 3d 1202, 1215 (D.N.M. 2020) (finding arbitration provision mandating plaintiff pay half the arbitrator fees unconscionable and unenforceable on plaintiff's showing of financial hardship); *Campbell v. Marshall Int'l, LLC*, No. 20 C 5321, 2022 WL 3684571, at *4 (N.D. Ill. Aug. 25, 2022) (invalidating arbitration provision requiring arbitration in Colorado where plaintiff was an Illinois resident). Paparazzi's authority is instructive by contrast. [*See* Mot. at 6 (finding fee-shifting provision to be enforceable only because it was limited to contract actions, not federal claims)].

[31] *See* Paparazzi's 2021 Income Disclosure Statement, available at: https://paparazziaccessories.com/media/static/site/documents/paparazzi-incomedisclosurestatement.pdf, last accessed March 1, 2023.

$1,000/month in earnings from Paparazzi.[32] And just 0.86% of Paparazzi's distributors averaged over $5,000/month. Given the relatively small amounts of money earned by the vast majority of Paparazzi, Paparazzi's mandate that its distributors arbitrate any claim, pay to travel to Utah at least twice, and pay at least half the costs of a three-arbitrator panel, makes arbitration impractical for nearly all of Paparazzi's distributors—allowing Paparazzi to perpetuate the very wrongs it has been sued for, for far too long.

B. <u>The Provision is One-Sided and Substantively Unconscionable.</u>

The one-sided travel and cost requirements are just two aspects of a provision permeated by an "overall imbalance in the obligations and rights imposed by the bargain."[33] While several individual components of Paparazzi's process render the provision unenforceable, courts look beyond individual arbitration provisions to assess unconscionability in the contract as a whole.[34] The unfair imbalance here is plain.

Paparazzi's provision subjects Counterclaim Plaintiffs to asymmetrical burdens that limit only Counterclaim Plaintiffs' rights under the agreement. These include a one-way requirement that Counterclaim Plaintiffs (but not Paparazzi) travel, a one-way requirement that Counterclaim Plaintiffs (but not Paparazzi) mediate disputes, a one-way requirement that Paparazzi (but not Counterclaim Plaintiffs) may seek injunctive relief in court, and a truncated statute of limitations on only Counterclaim Plaintiffs' claims (but not Paparazzi). Courts routinely find substantively unconscionable one-sided arbitration provisions that overwhelmingly favor one party over

---

[32] *Id.*
[33] *Sosa*, 924 P.2d. at 361–62.
[34] *See e.g.*, *Feacher v. Hanley*, No. 2:13-CV-92-EJF, 2014 WL 119382, at *5 (D. Utah Jan. 13, 2014) (holding contract "as a whole substantively unconscionable" where terms "demonstrate an unfair imbalance favoring" one party).

12

another.[35] Courts have also held provisions that purport to shorten the statute of limitations, as Paparazzi's provision does, to be unconscionable.[36]

C. <u>The Provision is Permeated with Unconscionability.</u>

Paparazzi seeks to enforce a provision that would require Counterclaim Plaintiffs to pay prohibitive costs to resolve their claims in arbitration while exempting from arbitration Paparazzi's own claims against Counterclaim Plaintiffs for injunctive relief. This clearly "demonstrate[s] an unfair imbalance" in Paparazzi's favor.[37] In *Feacher*, the court found the arbitration agreement substantively unconscionable "as a whole" because it tipped the scales unfairly in one party's favor, burdening only the plaintiff with fees and empowering only the defendants to withdraw from the contract. The same is true here. While Paparazzi may argue that individually problematic terms may be severed and the provision enforced, Paparazzi's "arbitration provision" is permeated with one-sided, oppressive terms that render the entire provision (which lacks a severability clause) substantively unconscionable and therefore unenforceable as a whole.[38]

---

[35] *See, e.g.*, *Patterson v. Nine Energy Serv.*, LLC, 330 F. Supp. 3d 1280, 1311 (D.N.M. 2018) (finding substantively unconscionable an arbitration agreement that exempted defendant's claims for injunctive relief against plaintiff from arbitration); *Ingle v. Cir. City Stores, Inc.*, 328 F.3d 1165, 1172-73 (9th Cir. 2003) (finding substantively unconscionable arbitration provisions that inordinately benefit the employer at the employee's expense, including one-way provisions on claim coverage, statute of limitations, fees, and power to modify the arbitration agreement)

[36] Courts have also held provisions that purport to shorten the statute of limitations, as Paparazzi's provision does, to be unconscionable. *See, e.g.*, *Streedharan v. Stanley Indus. & Auto.*, LLC, No. 5:22-CV-0322-MEMFKSX, 2022 WL 4537859, at *16 (C.D. Cal. Sept. 27, 2022).

[37] *Feacher*, 2014 WL 119382, at *5; *see also Harrison v. Envison Mgmt. Holding, Inc.*, No. 22-1098, 2023 WL 1830446, at *16 (10th Cir. Feb. 9, 2023) (invalidating arbitration agreement where provisions prevented effective vindication of statutory rights).

[38] *See Sosa*, 924 P.2d at 364 (noting that severing substantively unconscionable terms "would encourage procedural and substantive overreaching because the stronger party will have nothing to lose by trying to intimidate"); *compare CMH Homes, Inc.*, 441 F. Supp. 3d at 1215 (severing unconscionable cost-sharing provision because presence of severability clause indicated intent of parties).

### III. The Arbitration Provision Does Not Impact Claims Against Non-Parties.

Misty Kirby, Trent Kirby, Chani Reeve, and Ryan Reeve (collectively the "Founders") are not parties to either the Terms and Conditions nor the Policies and Procedures. Accordingly, Counterclaim Plaintiffs remain free to pursue their claims against the founders outside of arbitration. Per the express terms, the Terms and Conditions state that they are limited to "a dispute between Consultant and Paparazzi."[39] Similarly, the arbitration provision in the Policies and Procedures apply only to claims arising thereunder or "against Paparazzi."[40]

Therefore, the plain language of the arbitration provisions Paparazzi invokes do not mandate arbitration of Counterclaim Plaintiffs' claims against the Founders.[41]

### CONCLUSION

The Court should deny Paparazzi's motion to compel arbitration. Paparazzi waived any right it may have to arbitrate the claims and defenses in this case. It was Paparazzi that filed this suit and sought relief far beyond an injunction. Indeed, even after the injunction was issued, Paparazzi continued to litigate its claims, including by negotiating an Attorney Planning Meeting Report and Discovery Plan. For too long Paparazzi has been able to push its lead laden lockets and carcinogenic charms without challenge. It should not now be allowed to conceal its misdeeds through a private arbitration. For all these reasons, the Court should deny Paparazzi's request to compel arbitration.

---

[39] *See* Mot. Ex. A-1, ¶ 12.
[40] *Id.* at Ex. A-2, § 10.3.
[41] *See Avedon Eng'g, Inc. v. Seatex*, 126 F.3d 1279, 1286 (10th Cir. 1997) (noting that the FAA "was not enacted to force parties to arbitrate in the absence of an agreement")

DATED this 1st day of March, 2023.

                JAMES DODGE RUSSELL & STEPHENS, P.C.

                */s/ Justin L. James*
                Justin L. James
                Dillon P. Olson

                *Attorneys for Defendants Geraldine Souza, Jaime Robinson, and Jennifer Carrol*