Robert L. Lindholm (admitted *pro hac vice*)
NELSON MULLINS RILEY & SCARBOROUGH LLP
301 S. College Street, 23rd Floor
Charlotte, NC 28202
Tel: (704) 417-3000
robert.lindholm@nelsonmullins.com

*Attorneys for Counterclaim Defendants*
(*additional counsel on signature page*)

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF UTAH, SOUTHERN DIVISION

| | |
|---|---|
| **PAPARAZZI, LLC d/b/a PAPARAZZI ACCESSORIES, LLC**, a Utah limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>**MELISSA SORENSON**, an individual; **GERALDINE SOUZA**, an individual; **KYLEE ROBINETTE**, an individual; **MORGAN FERGUSON**, an individual; **JENNIFER DYER**, an individual; **JAIME ROBINSON**, an individual; **JENNIFER CARROL**, an individual; **KIMBERLEY DREWRY**, an individual; **RENEE BURGESS**, an individual; and **JOHN AND JANE DOES I–X**,<br><br>Defendants. | **COUNTERCLAIM DEFENDANTS' REPLY IN FURTHER SUPPORT OF THEIR MOTION TO COMPEL ARBITRATION PURSUANT TO 9 U.S.C. § 4**<br><br>Case No. 4:22-cv-00028-DN-PK<br><br>District Judge David Nuffer<br><br>Magistrate Judge Paul Kohler |

**GERALDINE SOUZA**, an individual, **JENNIFER CARROL**, an individual, and **JAIME ROBINSON**, an individual

       Counterclaim Plaintiffs,

v.

**PAPARAZZI, LLC d/b/a PAPARAZZI ACCESSORIES, LLC**, a Utah limited liability company, **MISTY KIRBY**, an individual, **TRENT KIRBY**, an individual, **CHANI REEVE**, an individual, and **RYAN REEVE**, an individual,

       Counterclaim Defendants.

**TABLE OF CONTENTS**

Page

INTRODUCTION .................................................................................................................. 1

I. THE PAPARAZZI PARTIES HAVE NOT WAIVED THEIR RIGHT TO ARBITRATE THE COUNTERCLAIMS. ........................................................... 2

    A. The Paparazzi Parties Took No Action Inconsistent with Their Intent to Arbitrate ................................................................................. 3

    B. The Remaining Factors Demonstrate There was No Waiver ................... 6

II. THE ARBITRATION PROVISIONS ARE ENFORCEABLE OR SEVERABLE ........................................................................................................ 7

    A. The Provisions Related to Arbitration are Not Unconscionable ................ 7

    B. Any Unenforceable Provisions Should be Severed ................................ 10

III. THE PAPARAZZI INDIVIDUALS CAN COMPEL ARBITRATION UNDER BASIC PRINCIPLES OF CONTRACT INTERPRETATION, AGENCY, ESTOPPEL, AND THIRD-PARTY BENEFICIARY LAW ........... 11

CONCLUSION……………………………………………………………………………….13

Counterclaim Defendants Paparazzi, LLC ("Paparazzi") and Misty Kirby, Trent Kirby, Chantel Reeve, and Ryan Reeve (the "Paparazzi Individuals") (collectively, the "Paparazzi Parties"), by and through their undersigned counsel, respectfully submit this Reply in Further Support of their Motion to Compel Arbitration Pursuant to 9 U.S.C. § 4 (ECF No. 129) (the "Motion").

In their Opposition (ECF No. 131), Counterclaim Plaintiffs Geraldine Souza, Jennifer Carrol, and Jaime Robinson ("the Souza Parties") make nearly identical arguments to the ones made by the plaintiffs in *Teske v. Paparazzi, et al.* in response to the Paparazzi Parties' motion to compel arbitration, which is currently pending before this Court. (*See* No. 22-cv-00035-DN-PK, ECF No. 68.) The Souza Parties, like the Teske Plaintiffs, concede that they are bound by the Independent Consultant Agreement, which contains a mandatory arbitration provision, and that the scope of that provision covers their claims.[1] Yet, the Souza Parties argue that this Court should ignore this binding contract because the Paparazzi Parties waived their right to arbitrate and the contract is unconscionable. Those arguments fail for the same reasons the Paparazzi Parties discussed in their reply brief in the *Teske* action. (*See* No. 22-cv-00035-DN-PK, ECF No. 71.)

The only new arguments the Souza Parties raise are that (1) Paparazzi waived its right to arbitrate because it filed a complaint against the Souza Parties and (2) the Paparazzi Individuals are non-signatories to the contract.[2] But filing a complaint is not sufficient to waive the right to

---

[1] *See, e.g.*, *Am. Charities for Reasonable Fundraising Regul., Inc. v. O'Bannon*, No. 2:08-cv-875, 2017 WL 4539321, at *4 (D. Utah Oct. 10, 2017) (unpublished) (party implicitly concedes an issue when failing to address that issue in responsive briefing).

[2] Most of the Souza Parties' Opposition is taken word for word from the Teske Plaintiffs' Opposition, including all of the case law cited in the Opposition except for one case.

1

arbitrate and the Paparazzi Individuals can enforce the arbitration provision under the express language of the arbitration provision and under basic principles of agency, estoppel, and third-party beneficiary law. Accordingly, this Court should compel arbitration of the Counterclaims.

## I. The Paparazzi Parties Have Not Waived Their Right to Arbitrate the Counterclaims.

Although the Souza Parties cite Utah law to assess whether a party has waived its right to arbitration, (Opp. at 5), it is "federal law [that] is used to determine whether the right to arbitrate has been waived." *Kathan v. Autovest, LLC*, No. 2:19-cv-486-TC, 2019 WL 4757870, at *1 (D. Utah Sept. 30, 2019) (unpublished); *see also BOSC, Inc. v. Bd. of Cnty. Commissioners of Cnty. of Bernalillo*, 853 F.3d 1165, 1170 (10th Cir. 2017) (applying federal law). In assessing whether the right to arbitration has been waived, Tenth Circuit courts examine the following:

> (1) are the party's actions inconsistent with the right to arbitrate;
> (2) has the litigation machinery been substantially invoked and the parties "were well into preparation of a lawsuit" before the party notified the opposing party of an intent to arbitrate;
> (3) has a party requested arbitration enforcement close to the trial date or delayed for a long period before seeking a stay;
> (4) has a defendant seeking arbitration filed a counterclaim without asking for a stay of the proceedings; and
> (5) have there been important intervening steps, such as taking advantage of judicial discovery procedures not available in arbitration; and
> (6) has the delay "affected, misled, or prejudiced" the opposing party.

*BOSC, Inc.* 853 F.3d at 1170.[3] The "burden of persuasion" is on "the party claiming that the right to demand arbitration has been waived." *Hill v. Ricoh Americas Corp.*, 603 F.3d 766, 775 (10th

---

[3] The United States Supreme Court's recent decision in *Morgan v. Sundance, Inc.* eliminates the final prong of that analysis and therefore Plaintiffs' alleged prejudice is irrelevant to the waiver analysis. *See Morgan v. Sundance, Inc.*, 142 S. Ct. 1708, 1713 (2022) (when assessing waiver of arbitration right, courts must examine actions of the party itself—not harm to someone else).

Cir. 2010). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *See BOSC, Inc.*, 853 F.3d at 1170.

### A. The Paparazzi Parties Took No Action Inconsistent with Their Intent to Arbitrate.

The Souza Parties argue that the Paparazzi Parties have acted inconsistently with their intent to arbitrate. This is baseless. Paparazzi initiated this action to obtain an injunction to protect its confidential information, which it is expressly authorized to do under the Independent Consultant Agreement.[4] The only substantive actions that Paparazzi has taken in this case (beyond filing suit) relate to its claim for injunctive relief, as it was granted both a temporary restraining order and preliminary injunction at the outset of this litigation. The Paparazzi Parties have not propounded discovery, filed any substantive motions on its legal claims, taken or defended depositions, or submitted proposed scheduling orders evidencing an intent to litigate the merits of this case. Beyond filing its initial disclosures (which it did pursuant to the Souza Parties' request and a Court order), Paparazzi has not taken any action in pursuit of its legal claims. (*See* ECF No. 125.) The Tenth Circuit has repeatedly rejected arbitration waiver arguments alleging much more pre-motion litigation than has occurred here. *See, e.g., Hill*, 603 F.3d at 771–76 (no waiver where party filed answer without raising arbitration as affirmative defense, exchanged Rule 26(a)(1)

---

[4] Paparazzi only included legal claims to preserve those claims and avoid any argument that they had been waived by not being asserted in the Complaint. Indeed, if this Court grants the Paparazzi Parties' Motion, Paparazzi will voluntarily dismiss its legal claims and pursue them in arbitration.

3

disclosures with counterparty, received discovery requests from counterparty, and—four months after answering—moved to compel arbitration).[5]

The Souza Parties' primary arguments in favor of waiver are that (1) Paparazzi initiated this litigation against them and included legal claims in its Complaint alongside its request for injunctive relief and (2) the Paparazzi Parties moved to sever the Counterclaims and attempted to consolidate them with claims asserted against Paparazzi in other cases. None of those actions waive the Paparazzi Parties' right to arbitration.

Filing suit, in and of itself, does not waive a party's right to arbitrate. *See Harris Research, Inc. v. Greenway Assocs., Inc.*, No. 1:16-cv-114 CW, 2017 WL 11461794, at *2 (D. Utah Jan. 27, 2017) (unpublished) (granting motion to compel arbitration of entire lawsuit after plaintiff brought suit and defendant counterclaimed reasoning, "[t]his lawsuit is in its relative infancy and the request for arbitration arises early in the litigation process. Barely any discovery has occurred and there have not been any adverse rulings against Plaintiff that they are trying to avoid with this motion"). Furthermore, filing suit on one subject does not waive a plaintiff's right to arbitrate unrelated claims against it on a *different* subject. *See Allianz Life Ins. Co. of N. America v. Richards*, No. 05-CV-0256 JCH/RLP, 2006 WL 8443844, at *3–4 (D.N.M. Sept. 14, 2006) (unpublished). "[E]ven if Plaintiff's claims are covered by the arbitration agreement, Plaintiff has not waived its right to arbitrate [the defendant's counterclaims] because [the defendant]'s counterclaims inject new, separate, and distinct issues into the litigation not raised by Plaintiff in

---

[5] *See also In re Cox Enterps., Inc. Set-Top Cable Telev. Box Antitrust Litig.*, 835 F.3d 1195, 1205-06 (10th Cir. 2016) (no waiver where party answered complaint and received discovery requests); *Altresco Philippines, Inc. v. CMS Generation Co.*, 111 F.3d 140, No. 96-1080, 1997 WL 186257, at *6 (10th Cir. 1997) (unpublished table decision) (no waiver where party removed case to federal court, answered, and moved for dismissal "before moving to compel arbitration").

4

its amended complaint." *Id.*; *see Konica Minolta Bus. Sols., U.S.A., Inc. v. Allied Office Prods., Inc.*, No. 2:06-cv-71, 2006 WL 3827461, at *12 (S.D. Ohio Dec. 27, 2006) (unpublished) ("[C]ourts have only found waiver where the legal and factual issues in the original claims and the counterclaims are the same.").

Paparazzi's affirmative claims and the Souza Parties' Counterclaims are unrelated. Paparazzi initiated this lawsuit to prevent the Souza Parties from improperly using its confidential information. (*See* Compl., ECF No. 2.) The Souza Parties subsequently named the Paparazzi Individuals as defendants and asserted counterclaims against the Paparazzi Parties based on allegations that they made misrepresentations about the contents of Paparazzi's products and that Paparazzi's business is an unlawful pyramid scheme. (*See* Souza Parties' Ans. And Counterclaim, ECF No. 74.). The Counterclaims are, therefore, based on an entirely different set of allegations and subject matter than Paparazzi's claims. (*See also* ECF No. 115 at 2–5.)

Nor is the fact that the Paparazzi Parties moved to sever the Counterclaims and consolidate them inconsistent with the right to arbitrate. First, as discussed above, those procedural actions fall far short of demonstrating an intent not to arbitrate. Second, if anything, the Paparazzi Parties' actions are consistent with that right. The Paparazzi Parties merely attempted to sever the Counterclaims and consolidate them with claims asserted against the Paparazzi Parties in other cases addressing the same subject matter—claims upon which the Paparazzi Parties *have also moved to enforce their arbitration rights*. (*See* Paparazzi's Mot. to Sever, ECF No. 102; *see also* Motion to Compel Arbitration Pursuant to 9 U.S.C. § 4, *Teske v. Paparazzi, LLC*, No. 4:22-cv-0035-DN-PK (Jan. 30, 2023), ECF No. 67).) The Souza Parties, however, do not articulate any reason as to how the Paparazzi Parties seeking procedural efficiencies that would allow this Court

to decide that arbitration issue for all the related cases together is somehow inconsistent with the right to arbitrate. Indeed, the very cases that the Souza Parties cite in support of their waiver argument show that the Paparazzi Parties have come nowhere near participating in the litigation to the extent and nature required to waive their right to arbitrate.[6]

B.     **The Remaining Factors Demonstrate There was No Waiver.**

The remaining Tenth Circuit arbitration waiver factors also favor the Paparazzi Parties. "[T]he litigation machinery" has not been substantially invoked at this point. Although the Souza Parties argue that the Paparazzi Parties attending *required* court conferences and jointly submitting a *required* Attorney Planning Report indicates the litigation machinery has been invoked, none of those actions come close to rising to the required level in the Tenth Circuit. The Paparazzi Parties

---

[6] *See Smile, Inc. Asia Pte. Ltd. v. BriteSmile Management, Inc.,* 2005 UT App 381, ¶ 26 122 P.3d 654 (waiver where defendant "substantially participated in litigation by (1) filing and arguing two motions to dismiss, (2) filing a counterclaim, (3) filing various memoranda in support of its motions or in opposition to [plaintiff]'s motions, (4) filing five joint scheduling orders, (5) filing a joint stipulation governing the disclosure of confidential documents, (6) filing a motion for a protective order, (7) participating in conference calls with the court, (8) taking part in attorney planning meetings, (9) serving several requests for discovery, (10) responding to some discovery requests, (11) taking and defending depositions of seven witnesses, and (12) engaging in correspondence with counsel for [plaintiff] regarding ongoing discovery issues."); *Strong v. Cochran*, No. 2:14-CV-788-TC, 2017 WL 1909168, at *3 (D. Utah May 9, 2017) (unpublished) (waiver where defendant (1) moved to compel arbitration after prior arbitration was ordered but was prematurely terminated by AAA due to nonpayment of arbitral fees, (2) failed to oppose plaintiff's motion to lift the stay in the federal action based on AAA's termination of prior arbitration, and (3) participated in subsequent status conference and 26(f) meeting but expressed no desire to return the case to arbitration).

have not "requested arbitration enforcement close to the trial date or delayed for a long period before seeking a stay," filed counterclaims, or taken discovery. *See BOSC, Inc.*, 853 F.3d at 1170.[7]

## II. The Arbitration Provisions are Enforceable or Severable.

Acknowledging again that they are bound by the arbitration provisions in the Independent Consultant Agreement, the Souza Parties make the same arguments the Teske Plaintiffs made and urge this Court to ignore the provisions because they are unconscionable. The Souza Parties are wrong. And even if this Court holds that certain provisions are unconscionable, the Counterclaims must still go to arbitration because any unenforceable provisions are severable.[8]

### A. The Provisions Related to Arbitration are Not Unconscionable.

The Souza Parties challenge: (1) the forum clause (requiring arbitration in Utah, Paparazzi's home state); (2) purported asymmetries in the mediation and injunctive relief provisions (providing resolution procedures for certain types of disputes); (3) the limitations clause (establishing a one-year limitations period); and (4) the fee-splitting and expense-shifting clause (requiring the Souza Parties to bear roughly half of arbitration costs and entitling the prevailing party to receive its costs and expenses). (Opp. at 10–13.)

The Forum Clause. The forum clause is enforceable and the Souza Parties' challenge is nonsensical. The Souza Parties themselves embrace Utah as the appropriate place for resolution of their claim—having filed their Counterclaims here (rather than their home states of California,

---

[7] Even if Utah law did apply—which it does not—the Souza Parties' arguments fail because the Paparazzi Parties have not participated in litigation to a point inconsistent with the intent to arbitrate.

[8] The Souza Parties' "effective vindication" theory is inapplicable to their state law claims as that theory only relates to federal statutory rights. *See Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 233, 236 (2013).

7

Idaho, or Texas). The Souza Parties cannot seriously contend that a *federal action* in Utah is affordable while an *individual* arbitration in Utah is not. *See Stocker v. Syntel, Inc.*, No. 03-2606-GTV, 2004 WL 1851410, at *3 (D. Kan. Aug. 16, 2004) (unpublished) (compelling arbitration despite plaintiff's "financial affidavit" declaring that "he would have to pay filing fees of over $8,000 to arbitrate, as well as travel expenses and other fees" because, *inter alia*, he "did not compare the projected costs of *arbitration* to the projected costs of *trying his case in court*" (emphasis added)). Moreover, Paparazzi has not relegated the Souza Parties' dispute resolution to a location disconnected from the subject matter of their claims; Paparazzi seeks to arbitrate claims in the only forum in which it is located (*i.e.*, Utah). *See Kepas v. eBay*, 412 F. App'x 40, 46 (10th Cir. 2010) (unpublished) (finding reasonable connection between the cause of action and forum selected and holding that forum selection provision at issue was not substantively unconscionable).

Finally, the Souza Parties have not shown their financial inability to arbitrate in Utah. *See Stocker*, 2004 WL 1851410, at *3 ("Where a party seeks to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive, that party bears the burden of showing the likelihood of incurring such costs." (quoting *Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 92 (2000))). Their counsel's generic references to the earnings of Paparazzi consultants "[o]n average" does not satisfy their burden to show unenforceability and is an obvious attempt to mask the fact that they were some of the highest earning Paparazzi consultants.

<u>Purported Asymmetries in Injunctive Relief and Mediation</u>. The Souza Parties argue that the Independent Consultant Agreement "subjects [them] to asymmetrical burdens that limit only [their] rights," because it permits Paparazzi to pursue intellectual property-related injunctive relief and to resolve disciplinary actions against its Consultants without mediation or arbitration. (Opp.

8

at 12.)  These clauses are enforceable, and the Souza Parties' challenges to them contradict recent case law in this district.  In *Love v. Overstock.com, Inc.*, the plaintiffs cited the same authority relied on by the Souza Parties and claimed that their arbitration agreement asymmetrically exempted their employer from arbitration on "those judicial remedies that [it was] likely to need." No. 2:22-cv-00118-DBB-CMR, 2022 WL 3345730, at *6 (D. Utah Aug. 12, 2022) (unpublished). The court rejected that argument. *Id.*  Noting that "certain types of unilateral carve-outs are common business practice," the court found that "the carve-out d[id] not rise to the level of substantive unconscionability recognized in this circuit." *Id.*  Here, to the extent there is any asymmetry, that asymmetry does not rise to the level of substantive unconscionability.

One-Year Limitations Period.  The Independent Consultant Agreement requires Consultants to bring disputes within one year.  Those provisions are routinely found to be enforceable.  *See, e.g., Burkett v. Convergys Corp.*, No. 2:14-cv-376-EJF, 2015 WL 4487706, at *5–6 (D. Utah July 23, 2015) (unpublished) (upholding "six-months limitations period" in employment agreement).  The Souza Parties' own caselaw recognizes as much.  *See Patterson v. Nine Energy Serv., LLC*, 330 F. Supp. 3d 1280, 1312–13 (D.N.M. 2018) (upholding 60-day time to sue).

Fee Splitting and Expense Shifting.  The arbitration fee splitting and expense shifting provisions are enforceable and comparable provisions are enforced around the country.  *See Shapiro v. Baker & Taylor, Inc.*, No. 07-3153 (MLC), 2009 WL 1617927, at *7–9 (D.N.J. June 9, 2009) (unpublished) ("[T]he reasonable fees and expenses of the arbitrator, as well as plaintiffs' financial circumstances, [we]re not such that the prospect of plaintiffs potentially having to pay costs up front or attorney's fees, in the event of losing, unduly burden[ed] their right to seek

9

relief."); *Musnick v. King Motor Co. of Ft. Lauderdale*, 325 F.3d 1255, 159–60 (11th Cir. 2003); *Tompkins v. 23andMe, Inc.*, 840 F.3d 1016, 1024–25 (9th Cir. 2016).

As discussed above, the Souza Parties claim financial hardship but offer no support. And they fail to identify the specific costs of arbitrators, travel, or the like, yet insist that those costs are beyond their capacity. *See Torgerson v. LCC Int'l, Inc.*, 227 F. Supp. 3d 1224, 1232–33 (D. Kan. 2017).[9] Therefore, they have not met their burden of showing these provisions are unenforceable.[10]

### B. Any Unenforceable Provisions Should be Severed.

Although the provisions cited by the Souza Parties are enforceable for the reasons stated above, if this Court finds any of the provisions unenforceable, it should sever those provisions pursuant to the Independent Consultant Agreement's severance clause and compel the Souza Parties' claims to arbitration. The Souza Parties, despite denying the existence of one, agreed to a severability provision in Paparazzi's Terms & Conditions: "If any provision of the Agreement is held to be invalid or unenforceable, such provision shall be severed, and the severed provision shall be reformed only to the extent necessary to make it enforceable. The balance of the Agreement will remain in full force and effect." (Motion Ex. 1, at § 11 (ECF No. 129-1).) Thus, this Court should sever any unenforceable provisions and enforce the remainder of the Independent

---

[9] With respect to the Souza Parties, Paparazzi agrees to pay the fees for any arbitrators, not to seek expenses from them even if the Paparazzi Parties prevail, and to allow them to participate in any arbitration final hearing by video negating any travel expenses for them.

[10] In addition, "Utah courts routinely prevent one party from claiming that a contract is invalid if they accept that contract's benefits. . . . Utah courts have long held that this standard is met when one party accepts the benefit of the bargain and performs under its terms only to later question the validity of the instrument." *Ivy Bridge v. Nature's Sunshine Prods., Inc.*, 21-cv-495-DAK-DAO, 2022 WL 604857, at *6 (March 1, 2022) (unpublished) ("Plaintiffs cannot receive the benefits of the Membership Agreement and avoid the arbitration clause"). The Souza Parties have benefitted under the contract here for years and cannot now avoid it.

Consultant Agreement. (*See* Opp. at 13 n.38 (conceding in explanatory parenthetical that "presence of severability clause indicate[s] intent of parties")); *see, e.g.*, *Love*, 2022 WL 3345730, at *5–10 (severing provisions and compelling arbitration). The Souza Parties' own caselaw (Opp. at 11–13) even recognizes that severance is the appropriate procedure for unenforceable clauses.[11]

### III. The Paparazzi Individuals Can Compel Arbitration under Basic Principles of Contract Interpretation, Agency, Estoppel, and Third-Party Beneficiary Law.

The Souza Parties contend that the Paparazzi Individuals cannot invoke the arbitration provisions contained therein because they did not sign the Independent Consultant Agreement. (*See* Opp. at 14.) This argument—for which the Souza Parties cite no supportive case—contradicts basic principles of contract interpretation, estoppel, agency, and third-party beneficiary law. *See, e.g.*, *Seaborn v. Larry H. Miller Mercedes Benz*, No. 2:19-cv-941 TS, 2020 WL 1550789, at *2 (D. Utah Apr. 1, 2020) (unpublished) ("[W]hile it is true that the individual Defendants were not signatories to the arbitration agreement, they still may compel arbitration because they 'otherwise possess the right' of arbitration . . . through the agency, estoppel, and third-party beneficiary theories."); *Ellsworth v. American Arbitration Ass'n.*, 148 P.3d 983, 989 n.11 (Utah 2006) ("Traditionally, five theories for binding a nonsignatory to an arbitration agreement have been recognized: (1) incorporation by reference; (2) assumption; (3) agency; (4) veil-piercing/alterego; (5) estoppel. . . . Sometimes a sixth theory, third-party beneficiary, is added . . . .").

The arbitration provision in the Policies & Procedures states that "by accepting this agreement, the Consultant agrees and covenants not to file suit against Paparazzi, any of its

---

[11] *See Sanchez v. Nitro Lift Techs., L.L.C.*, 91 F. Supp. 3d 1218, 1223–25 (E.D. Okla. 2015); *CMH Homes, Inc. v. Sexton*, 441 F. Supp. 3d 1202, 1215–16 (D.N.M. 2020); *Patterson*, 330 F. Supp. 3d at 1311 ("[I]t would make little sense for the Court to trash the entire Arbitration Agreement because of an unconscionable provision unrelated to this case.").

11

affiliates, subsidiaries, *officers*, *directors*, *or employees* for any claim or grievance the Consultant may have arising from the status as an Independent Consultant of Paparazzi." (Policies & Procedures § 10.3 (emphasis added).) Thus, the language of that provision expressly covers the Paparazzi Individuals within its scope.

The Paparazzi Individuals may also enforce the arbitration provision against the Souza Parties under the doctrine of estoppel. *See Seaborn,* 2020 WL 1550789, at *3; *Ellsworth*, 148 P.3d at 989 n.12 ("Another variety of nonsignatory estoppel is that enforced *by a nonsignatory* when the signatory plaintiff sues a nonsignatory defendant on the contract but seeks to avoid the contract-mandated arbitration by relying on the fact that the defendant is a nonsignatory."). Here, the Souza Parties rely on the terms of the written agreement in asserting their Counterclaims (*see* Countercls. And Third-Party Compl., ¶¶ 29–30, 52, 55.), but claim the arbitration clause of the same contract does not apply. This is improper. *See Seaborn,* 2020 WL 1550789, at *3 ("Seaborn relies on the terms of the written agreement in asserting his claims. Seaborn cannot seek to enforce the contract against the individual Defendants while simultaneously claiming the arbitration clause of the same contract does not apply.").

In addition, as officers of the company, the Paparazzi Individuals qualify as agents of Paparazzi and may compel arbitration against the Souza Parties. *See id.* ("Under agency theory, agents 'assume the protection of the contract which the principal has signed,' and they may 'compel arbitration of claims made against [them] by a signatory to the agreement.'"); *St. Pierre v. Advanced Call Center Techs., LLC*, No. 15-cv-02415-JAD-NJK, 2016 WL 6905377, at *4 (D. Nev. Nov. 22, 2016) (unpublished) (under Utah law "where two parties to an agreement contemplate that a principal's alleged wrongdoing would be subject to arbitration, it makes little

12

sense to treat that principal's agent any differently—regardless of whether the claim directly arises from the contract's terms.  Practically, companies act through employees and agents, and it makes little sense to allow a plaintiff to avoid what would otherwise be an arbitrable claim if brought against the principal, simply because an agent carried out that same act at the principal's behest.").

Finally, the Paparazzi Individuals also have a right to arbitrate as third-party beneficiaries. "If, at the time of contracting, the intent to make someone a third-party beneficiary is 'clearly written or evidenced in the contract,' then the presumption that the parties were only contracting for themselves is overcome and the named third-party beneficiaries receive the protections and obligations of arbitration." *See Seaborn,* 2020 WL 1550789, at *3.  As noted above, the arbitration provision expressly protects "officers, directors, or employees," (Policies & Procedures § 10.3), and therefore the Paparazzi Individuals are third-party beneficiaries.  Accordingly, this Court should reject the Souza Parties' baseless assertion that the Paparazzi Individuals cannot invoke the arbitration provisions.

## CONCLUSION

Accordingly, this Court should grant the Paparazzi Parties' Motion to Compel Arbitration.

Respectfully submitted the 15th day of March, 2023.

                    **NELSON MULLINS RILEY & SCARBOROUGH LLP**

                    By: */s/* Robert L. Lindholm

                        Robert L. Lindholm (admitted *pro hac vice*)
                        One Wells Fargo Center
                        301 South College Street, 23rd Floor
                        Charlotte, NC 28202
                        (704) 417-3000
                        robert.lindholm@nelsonmullins.com

                        Matthew G. Lindenbaum (admitted *pro hac vice*)
                        One Financial Center, Suite 3500
                        Boston, MA 02111
                        (617) 217-4700
                        matthew.lindenbaum@nelsonmullins.com

                        Wesley T. Moran (admitted *pro hac vice*)
                        3751 Robert M. Grissom Parkway
                        Myrtle Beach, SC 29577
                        (843) 946-5686
                        wes.moran@nelsonmullins.com

                  **BUCHALTER, P.C.**

                        Douglas P. Farr
                        Jacob D. Barney
                        111 South Main Street, Suite 600
                        Salt Lake City, UT 84111
                        (801) 401-8688
                        dfarr@buchalter.com
                        jbarney@buchalter.com

                        Anne Marie Ellis (admitted *pro hac vice*)
                        18400 Von Karman Ave. Suite 800
                        Irvine, CA 92612
                        (949) 224-6223
                        aellis@buchalter.com

                  *Attorneys for Defendants*

# CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 15th day of March, 2023 I caused a true and correct copy of the foregoing instrument to be served on all counsel of record via the Court's CM/ECF system.

*/s/Robert L. Lindholm*
Robert L. Lindholm
