UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| PAPARAZZI, LLC d/b/a PAPARAZZI ACCESSORIES, LLC, a Utah limited liability company,<br><br>              Plaintiff,<br><br>vs.<br><br>GERALDINE SOUZA, an individual, MORGAN FERGUSON, an individual, JAIME ROBINSON, an individual, and JENNIFER CARROL, an individual,<br><br>              Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING PAPARAZZI'S APPLICATION AND MOTION FOR PRELIMINARY INJUNCTION**<br><br>Civil No. 4:22-CV-00028-DN-PK<br><br>District Judge David Nuffer<br>Magistrate Judge Paul Kohler |

This order resolves Plaintiff Paparazzi, LLC's ("Paparazzi") Application and Motion for Temporary Restraining Order and Preliminary Injunction ("Motion"). Paparazzi moved pursuant to Federal Rule of Civil Procedure 65 to issue a preliminary injunction enjoining Defendant Geraldine Souza ("Souza") from continuing to disparage Paparazzi in breach of the non-disparagement clause contained in the parties' Confidential Settlement Agreement and Release ("Settlement Agreement"). That agreement arose out of the initial phase of this litigation in 2022. This order resolves a post-settlement dispute that arose in late 2025.

The parties' briefs, supporting declarations, and supporting documents have been carefully reviewed. A hearing, on notice, was held Friday December 19, 2025. For the reasons set forth below, Paparazzi's Motion for Preliminary Injunction is GRANTED.

**Contents**

1  BACKGROUND ........................................................................................................... 2
   1.1  Souza's History of Defaming and Disparaging Paparazzi Online ......................... 3
   1.2  Procedural History Granting Temporary Restraining Order and Preliminary Injunction Against Souza and Compelling Claims to Arbitration ......................... 4
   1.3  The Parties' Settlement Agreement ........................................................................ 6
   1.4  Souza's Breach of the Settlement Agreement ........................................................ 8
   1.5  Procedural History .................................................................................................. 9
2  DISCUSSION ............................................................................................................. 12
   2.1  PAPARAZZI'S MOTION FOR PRELIMINARY INJUNCTION. ...................... 12
      2.1.1  Paparazzi Has Shown a Substantial Likelihood of Success on the Merits of its Breach of Contract Claim ......................................................................... 12
      2.1.2  Paparazzi Has Shown a Likelihood of Irreparable Harm. ........................ 13
      2.1.3  The Threatened Injury to Paparazzi Significantly Outweighs Any Potential Harm to Souza. .................................................................................... 14
      2.1.4  Public Interest Favor Injunctive Relief. ..................................................... 15
      2.1.5  No Bond Is Required ................................................................................. 16
3  PRELIMINARY INJUNCTION ................................................................................ 16

## 1  BACKGROUND

Paparazzi is a fashion accessory wholesaler headquartered in Utah with salespeople ("Consultants") operating across the United States.[1] Consultants operate as independent contractors.[2] Souza was a Consultant from November 2017 until February 2021.[3] Paparazzi terminated Souza as a Consultant on or about February 25, 2021, for violations of Paparazzi's policies and procedures.[4]

---

[1] Declaration of Trent Kirby in Support of Paparazzi's Application and Motion for Temporary Restraining Order and Preliminary Injunction (the "Kirby Declaration"), Ex. B to Motion, docket no. 149-2, at ¶ 3 (filed November 21, 2025).

[2] *Id.* at ¶ 3.

[3] *Id.* at ¶ 5.

[4] *Id.* at ¶ 9.

### 1.1 Souza's History of Defaming and Disparaging Paparazzi Online

After Paparazzi terminated Souza as a Consultant in February 2021, Souza joined and participated in several social media groups comprised generally of former Paparazzi Consultants. These social media groups include: Tea Time, Crack the Crown, and Papa Chat United.[5] These groups posted numerous videos online on Facebook, YouTube, and Clubhouse, among other social media websites, with the stated goal of "taking down" Paparazzi and disrupting its business.[6] Eventually those groups spent much of their time online alleging that Paparazzi's jewelry products contained lead and nickel and were dangerous to the health of those who wore or handled Paparazzi jewelry.[7]

In one group, Tea Time, Souza participated in videos that were uploaded to YouTube beginning in October 2021 where she linked Paparazzi's jewelry products to her health problems.[8] These videos were viewed thousands of times.[9]

In another group, Papa Chat United ("Papa Chat"), Souza, other former consultants, and at least one former Paparazzi employee conspired to steal confidential Paparazzi documents and information, including information which was defined as Confidential Information in Paparazzi's

---

[5] *Id.* at ¶10–11.

[6] *Id.* at ¶ 11.

[7] *Id.* at ¶ 12.

[8] *Id.* at ¶13; *Paparazzi Accessories Is Not Lead & Nickel Free – Live Lead Testing*, Tuesday Tea Time Episode 11 (Nov. 19, 2021) at 1:30:40 – 1:30:50, https://www.youtube.com/watch?v=9lW25Jga-6c&t=2454s; *Ex-Elite Gone Rogue, She Threatened Us!*, Tuesday Tea Time Episode 15 (Jan. 4, 2022) at 46:08 – 47:31, https://www.youtube.com/watch?v=M91DcpAKPCA&t=2201s; *We Got Official Lab Testing On Paparazzi Jewelry & It's Worse Than We Thought*, Tea Time Episode 16 (Jan. 4, 2022) at 36:36 – 37:07, https://www.youtube.com/watch?v=ErS7FpfSz9I&t=2475s.

[9] Kirby Decl., docket no. 149-2, ¶ 13.

policies and procedures.[10] The former Paparazzi employee informed Souza and others that although she was terminated, she still had access to a Paparazzi corporate administrative account.[11] Souza and the others used the former employee's unauthorized access to gather as many confidential documents as they could, including the total number of Paparazzi consultants, customers, consultant profiles, and active consultants.[12] They also obtained and shared financial data and information relating to sales and commission reports.[13] Souza and others sought to use this information in their continued harassment of Paparazzi online across various social media platforms.[14]

### 1.2   Procedural History Granting Temporary Restraining Order and Preliminary Injunction Against Souza and Compelling Claims to Arbitration

Upon learning of Souza's and others unauthorized access, Paparazzi filed its Verified Complaint in this matter[15] and moved for a preliminary injunction. A preliminary injunction[16] was issued which was later extended into a preliminary injunction that enjoined Souza and others from attempting to obtain any of Paparazzi's Confidential Business Information; from sharing, either digitally or otherwise, any of Paparazzi's Confidential Business Information that she and

---

[10] *Id.* at ¶ 14.

[11] *Id.* at ¶ 15.

[12] *Id.* at ¶ 16.

[13] *Id.*

[14] *Id.* at ¶ 17.

[15] Complaint, docket no. 2, filed April 25, 2022.

[16] Memorandum Decision and Temporary Restraining Order, docket no. 30, filed May 10, 2022.

others had already obtained; and from discussing, by any method and with any person, Paparazzi's Confidential Business Information.[17]

On August 15, 2022, Souza and others filed a Counterclaim[18] and Third-Party Complaint[19] in this case against Paparazzi and its owners (the "Counterclaims"). Among other grievances, Souza alleged that Paparazzi misrepresented its jewelry as lead-free and nickel-free when in fact it had lead and nickel in it and that wearing jewelry containing lead and nickel can cause adverse health effects. On February 8, 2023, Paparazzi filed a motion to compel arbitration of the Counterclaims.[20]

On April 3, 2023, Memorandum Decision and Order Granting Counterclaim Defendants' Motion to Compel Arbitration (the "Motion to Compel Order") was issued compelling all the counterclaims and third-party claims brought by Souza and others (except for a claim for Violation of Utah's Pyramid Scheme Act) to arbitration.[21] The case was stayed pending completion of arbitration, the Clerk of Court administratively closed the case, and the order stated "[t]he case may be reopened upon motion by any party after the completion of arbitration."[22]

Souza filed an arbitration demand on July 7, 2023 (the "Arbitration Demand"). Souza alleged again in her Arbitration Demand that Paparazzi advertised its jewelry as lead-free and

---

[17] Memorandum Decision Granting Preliminary Injunction, docket no. 37, filed May 20, 2022.

[18] Counterclaim, docket no. 74, filed August 15, 2022.

[19] Third Party Complaint, docket no. 75, filed August 15, 2022.

[20] Motion to Compel Arbitration, docket no. 129, filed February 8, 2023.

[21] Memorandum Decision and Order Granting Motion to Compel Arbitration, docket no. 140, filed February 8, 2023.

[22] *Id.* at 11.

nickel-free but that the jewelry contained lead and nickel. Souza alleged that she purchased jewelry and accessories from Paparazzi and that she could no longer sell the jewelry or had to sell it at a discount in light of her own assertions that the jewelry had lead and nickel in it. Souza also alleged that lead and nickel are known human carcinogens that can lead to harmful health effects.

### 1.3   The Parties' Settlement Agreement

In December 2024, Paparazzi (and its founders) and Souza (and the other former Paparazzi consultant who had filed an arbitration) entered into the Settlement Agreement to resolve among other disputes, the Arbitration Proceeding.[23] Given Souza's history of disparaging Paparazzi online, Paparazzi specifically negotiated for certain material terms in the Settlement Agreement to protect it if Souza disparaged Paparazzi or its owners. One material term in the Settlement Agreement is the non-disparagement provision in Section 8, which provides that the Parties "will not at any time make, cause to make, publish or communicate to an person or entity or in any public or private forum any statements or representations . . . either orally, in gestures, inference, in writing, via electronic transmission, or video, by implication, or otherwise, that defames or disparages the business, reputation, practices, or conduct of the other":

> **8. Non-Disparagement.** The Parties either through themselves or their agents, will not at any time make, cause to make, publish, or communicate to any person or entity or in any public or private forum any statements or representations (including, without limitation, the repetition or distribution of derogatory rumors, allegations, negative reports or comments) either orally, in gestures, inference, in writing, via electronic transmission, or video, by implication, or otherwise, that defames or disparages the business, reputation, practices, or conduct of the other, including (i) the Paparazzi Parties or Claimants or (ii) Paparazzi's independent consultants or (iii) either Parties' subsidiaries, employees, agents, products

---

[23] An unredacted copy of the Settlement Agreement is at docket no. 151, filed under seal November 21, 2025.

6

>   attorneys (including the law firms of Nelson Mullins Riley & Scarborough LLP, Buchalter, P.C., and James Dodge Russell & Stephens, P.C.), and insurers (including Auto-Owners Insurance) in relation to or affiliation with the Paparazzi Parties or Claimants. For the avoidance of doubt, this provision also specifically prohibits Claimants from (i) participating in any online groups that discuss the Paparazzi Parties, Paparazzi's employees, or Paparazzi's products or (ii) communicating in any form regarding heavy metal testing or content of Paparazzi's jewelry or Paparazzi's business practices and specifically prohibits Claimants from participating in any online, social media, or other groups that discuss the Paparazzi Parties. Claimants also agree that the independent consultants that sell Paparazzi jewelry are not the Paparazzi Parties' agents. The Paparazzi Parties agree that the customers, independent contractors, or other individuals in the "Crack the Crown" group or affiliated therewith are not the agents of Claimants. Notwithstanding the foregoing, nothing in this Agreement is intended to or shall prevent or preclude any Party from providing truthful testimony and information (1) in response to a legal subpoena or court order to testify in connection with any judicial proceeding or (2) in connection with an investigation or proceeding conducted by any federal, state, or local regulatory or law enforcement agency, in which the provisions of Section 8 apply. Should Claimants breach this provision of the Settlement Agreement, they agree that the provisions set forth in Paragraph 22 shall apply. Claimants agree that this provision applies regardless of where Claimants reside.[24]

Another material term in the Settlement Agreement was Section 21 dealing with remedies, which contains a liquidated damages clause and provides, among other things, that if there is a breach of the Settlement Agreement, the non-breaching party is entitled to an immediate injunction:

>   [i]n the event of a breach or threatened breach of any provision of this Agreement, the breaching Party or Party threatening breach acknowledges and agrees that the other (non-breaching) Party will suffer irreparable harm and further acknowledges and agrees that the other Party's remedies at law are inadequate, and that the other Party shall be entitled to an immediate injunction restraining such breach or potential breach as well as other equitable relief, but nothing herein shall be construed as prohibiting the other Party from pursuing any other remedy available for such breach or threatened breach.[25]

---

[24] Ex. A to Motion, docket no. 149-1, § 8.

[25] Id. § 21.

### 1.4 Souza's Breach of the Settlement Agreement

After Paparazzi terminated Souza as a Consultant, Souza started an online business selling jewelry and accessories.[26] Souza maintains a Facebook page for the online business called Feisty Bombshells VIP.[27] On or about October 7, 2025, a little over nine months after executing the Settlement Agreement, Souza posted a recording of her going "live" on her Feisty Bombshells VIP Facebook page (the "October 7 Video").[28] In the October 7 Video, Souza made several comments, that when viewed in conjunction with others made throughout the video and her previous allegations against Paparazzi, clearly imply that Paparazzi caused her alleged colon cancer and other health problems. This violates the non-disparagement provision contained in the Settlement Agreement.[29]

Furthermore, on November 18, 2025, Souza posted on her own personal Facebook page implying again that Paparazzi's jewelry products caused her colon cancer and other health issues (the "November 18 Post").[30] Again, although Souza never wrote the word "Paparazzi," the comments to her post and Souza's own replies to those comments clearly show that she was referring to Paparazzi causing her alleged colon cancer and other health problems. That too violates the non-disparagement provision contained in the Settlement Agreement.

---

[26] Docket no. 149-2, ¶ 26.

[27] Id.; see https://www.facebook.com/feistybombshells.

[28] Id. ¶ 25.

[29] Ex. D to Motion, ECF No. 149-4, at 2:19-22, 2:24-3:1, 3:2-6, 3:8-11, 4:2-11, 6:2-11, 14:11-13, 15:11-15, 16:9-11, 32:1-5, 33:15-17, 38:12-14, 38:24-39:1.

[30] ECF No 149-2, ¶ 28; ECF No. 149-6.

### 1.5  Procedural History

Paparazzi filed the original complaint on April 25, 2022,[31] along with the first Motion for Temporary Restraining Order and Preliminary Injunction.[32] Ms. Souza was served, conferring jurisdiction.[33] On May 10, 2022, a Temporary Restraining Order was issued,[34] and a preliminary injunction followed ten days later.[35] Ms. Souza attended the hearings[36] but was not subject to either order. Both Paparazzi[37] and Ms. Souza filed cross Motions to Compel Arbitration.[38]

This case was stayed and administratively closed April 2, 2023, because arbitration was compelled.[39] The order provided "[t]he case may be reopened upon motion by any party after the completion of arbitration."[40] No judgment or permanent order was entered in the case, except a consent decree entered against other defendants.[41] The parties neglected to inform the court that the arbitration was terminated by the Settlement Agreement. Souza' counsel also failed to withdraw.[42]

---

[31] Complaint, docket no. 2, filed April 25, 2022.

[32] Motion for Temporary Restraining Order and Preliminary Injunction, docket no. 3, filed April 25, 2022.

[33] Summons, docket no. 85, filed April 26, 2022.

[34] Memorandum Decision and Temporary Restraining Order, docket no. 30, filed May 10, 2022.

[35] Memorandum Decision/Preliminary Injunction, docket no. 37, filed May 20, 2022.

[36] Minute Entry, docket no. 31, filed May 10, 2022.

[37] Motion to Compel Arbitration, docket no. 129, filed February 8, 2023.

[38] Motion to Compel Arbitration, docket no. 131, filed March 1, 2023.

[39] Memorandum Decision and Order Granting Counterclaim Defendants' Motion to Compel Arbitration, docket no. 140, filed April 3, 2023.

[40] *Id*. at 11.

[41] Consent Decree Against Melisse Sorenson, Kylee Robinette, and Jennifer Dyer, docket no. 143, filed March 22, 2024.

[42] Notice of Status of Case, Counsel, and Party Notice at 3-4, docket no. 164, filed December 18, 2025. By a separate order, Souza's former counsel are directed to comply with DUCivR 83-1.4.

On November 21, 2025, Paparazzi simultaneously filed a Motion to Reopen[43] and a Second Motion for Temporary Restraining Order and Preliminary Injunction.[44] Paparazzi was ordered to serve Ms. Souza and her attorney of record.[45] Paparazzi completed personal service of those papers on Ms. Souza, with a new demand for arbitration and the Settlement Agreement, on November 28, 2025.[46] The case was reopened December 10, 2025, and Ms. Souza was ordered to respond to the Second Motion for Temporary Restraining Order and Preliminary Injunction.[47]

The court gave email notice of hearing[48] on the Second Motion for Temporary Restraining Order and Preliminary Injunction and emailed the Zoom link to Ms. Souza and counsel of record.[49] To make the status of the case and counsel perfectly clear, a Notice of Status of Case, Counsel, and Party Notice issued December 18, 2025.[50] These December 18, 2025, documents were personally served on Ms. Souza,[51] along with some lodged emails between Paparazzi counsel and former defense counsel,[52] that same day.

---

[43] Motion to Reopen Action, docket no. 148, filed November 21, 2025.

[44] Second Motion for Temporary Restraining Order and Motion for Preliminary Injunction, docket no. 149, filed November 21, 2025.

[45] Docket Text Order, docket no. 155, filed November 24, 2025.

[46] Certificate of Service, docket no. 158, filed December 3, 2025.

[47] Docket Text Order granting 148 Motion to Reopen Action, docket no. 159, filed December 10, 2025.

[48] Notice of Hearing on Motion, docket no. 160, filed December 17, 2025.

[49] Email to parties regarding Zoom Hearing, docket no. 163, filed December 18, 2025.

[50] Notice of Status of Case, Counsel, and Party Notice, docket no. 164, filed December 18, 2025.

[51] Affidavit of Service, docket no. 165, filed December 18, 2025.

[52] These emails (docket nos. 161 and 162) establish that counsel for Paparazzi and former counsel for Ms. Souza all understand that Ms. Souza has been without counsel since the execution of the Settlement Agreement. At the hearing, counsel for Paparazzi represented that email has previously been exchanged with former counsel for Ms. Souza that also confirm she is currently unrepresented.

On December 19, 2025, at 2:00 p.m. a hearing was held via Zoom on Paparazzi's Second Motion for Temporary Restraining Order and Preliminary Injunction Neither Ms. Souza nor her counsel attended or filed a response.[53] During November and December 2025, no emails sent to Ms. Souza by the court or counsel resulted in notices of non-delivery. The time for Ms. Souza's response to the Second Motion for Temporary Restraining Order and Preliminary Injunction was long past by the time of the hearing. Further, because ample notice has been given to Ms. Souza, this relief does not issue without notice and is therefore a preliminary injunction.

During the December 19 hearing, Paparazzi's counsel confirmed that a parallel arbitration proceeding is underway consistent with Paragraph 23 of the Settlement Agreement. That paragraph provides that disputes under the agreement are to be arbitrated, but that a court may issue "provisional relief in the form of a temporary restraining order or preliminary injunction" which would then be embraced in the final arbitration award. Counsel explained that Paparazzi asks this court to grant a preliminary injunction. Paparazzi will seek a permanent injunction in the arbitration (which has been filed but not assigned to a panel), and Paparazzi will return to enforce that arbitration award in this court. Counsel confirmed that the arbitration's scope is not limited to damages, and that this ancillary court proceeding is in aid of the arbitration, which can provide complete relief.

The Motion for Preliminary Injunction was granted at the hearing's conclusion.[54] A minute entry was entered[55] to be followed by this order.

---

[53] *See generally* Docket.

[54] Minute Entry, docket no. 166, filed December 19, 2025.

[55] *Id.*

# 2 DISCUSSION

## 2.1 PAPARAZZI'S MOTION FOR PRELIMINARY INJUNCTION.

"Rule 65 of the Federal Rules of Civil Procedure grants the court authority to issue a preliminary injunction."[56] "The Tenth Circuit has interpreted the Rule 65 standard as a four-element test, and the court may issue a preliminary injuction only when the movant establishes: '(1) a substantial likelihood of prevailing on the merits; (2) irreparable harm unless the injunction is issued; (3) that the threatened injury outweighs the harm that the preliminary injunction may cause the opposing party; and (4) that the injunction, if issued, will not adversely affect the public interest.'"[57]

### 2.1.1 Paparazzi Has Shown a Substantial Likelihood of Success on the Merits of its Breach of Contract Claim.

The evidence submitted by the parties, and their respective positions as set forth in their briefing, shows that Paparazzi has shown a substantial likelihood it will succeed on the merits of its breach of contract claim, which provides the basis for the preliminary injunctive relief requested in Paparazzi's Motion.

Under Utah law, a breach of contract claim requires "(1) a contract, (2) performance by the party seeking recovery, (3) breach of the contract by the other party, and (4) damages."[58] The Settlement Agreement is a valid and binding contract between Paparazzi and Souza. The plain terms of the Settlement Agreement require Souza to refrain from making any comments or statements that are disparaging to Paparazzi. Specifically, the non-disparagement clause in the

---

[56] *Blendtec Inc. v. Blendjet Inc.*, No. 2:25-CV-00096-RJS-DPB, 2025 WL 2661555, at *9 (D. Utah Sept. 17, 2025).

[57] *Id.* (quoting *Dine Citizens Against Ruining Our Env't v. Jewell*, 839 F.3d 1276, 1281 (10th Cir. 2016)).

[58] *Am. W. Bank Members, LLC v. State*, 2014 UT 49, ¶15, 342 P.3d 224, 230–31.

Settlement Agreement provides that the Parties "will not at any time make, cause to make, publish or communicate to a person or entity or in any public or private forum any statements or representations . . . either orally, in gestures, inference, in writing, via electronic transmission, or video, by implication, or otherwise, that defames or disparages the business, reputation, practices, or conduct of the other . . . ."[59]

Souza breached the non-disparagement provision when she made comments implying that Paparazzi's products caused her to develop colon cancer and other health issues. These comments directly disparage Paparazzi's business and reputation. As a result of Souza's disparaging comments, Paparazzi has suffered reputational harm to its business, as set forth in the sworn declaration of Trent Kirby, one of Paparazzi's founders.[60] Moreover, the Settlement Agreement expressly entitles Paparazzi to injunctive relief to prevent Souza's further disparagement of Paparazzi.[61]

### 2.1.2   Paparazzi Has Shown a Likelihood of Irreparable Harm.

The "irreparable harm requirement is met if a [movant] demonstrates a significant risk that [it] will experience harm that cannot be compensated after the fact by monetary damages."[62] Courts have repeatedly held, "[i]rreparable injury may include different types of losses that are often difficult to quantify, including lost sales and erosion in reputation and brand distinction."[63]

---

[59] Docket no. 149-1, § 8.

[60] Docket no. 149-2, ¶ 30.

[61] Docket no. 149-1, ¶ 21.

[62] *Inception Mining, Inc. v. Danzig, Ltd.*, 312 F. Supp. 3d 1271, 1285 (D. Utah 2018) (quoting *Greater Yellowstone Coalition v. Flowers*, 321 F.3d 1250, 1258 (10th Cir. 2003)).

[63] *In re BRCA1-,BRAC2-Based Hereditary Cancer Test Patent Litig.*, 3 F. Supp. 3d 1213, 1249 (D. Utah 2014), *aff'd and remanded sub nom. In re BRCA1- & BRCA2-Based Hereditary Cancer Test Patent Litig.*, 774 F.3d 755 (Fed. Cir. 2014); *Hunsaker v. Kersh*, 1999 UT 106, ¶ 10, 991 P.2d 67, 70 ("Loss of business and goodwill may constitute irreparable harm susceptible to

Given that irreparable injury can be difficult to quantify, Souza and Paparazzi agreed in the Settlement Agreement that "the breaching Party . . . acknowledges and agrees that the other (non-breaching) Party will suffer irreparable harm and further acknowledges and agrees that the other Party's remedies at law are inadequate, and that the other Party shall be entitled to an immediate injunction restraining such breach . . . ."[64]

Moreover, Souza is attempting to convince her followers, many of whom are former Paparazzi Consultants, that Paparazzi products they formerly sold caused her cancer. Souza's large online following still consists of hundreds if not thousands of Paparazzi Consultants and Paparazzi end-consumers and thousands of potential Paparazzi end-consumers. Her statements can easily be distributed and redistributed to the public at large (including to those who do not follow Souza). Paparazzi is likely to suffer irreparable harm in the form of lost customers, loss of goodwill, reputational harm, lost market share, and lost future business, if Souza is not enjoined from making disparaging comments against Paparazzi as the Settlement Agreement expressly prohibits.[65]

### 2.1.3 The Threatened Injury to Paparazzi Significantly Outweighs Any Potential Harm to Souza.

A preliminary injunction is appropriate here because the harm that Paparazzi will likely suffer if the injunction is not granted significantly outweighs any potential injury that Souza may suffer because of the preliminary injunction. In ruling on a preliminary injunction, "[a] court must balance the competing claims of injury and must consider the effect on each party of the

---

injunction."); *Tri-State Generation & Transmission Ass'n, Inc. v. Shoshone River Power, Inc.*, 805 F.2d 351, 356 (10th Cir. 1986) ("A threat to trade or business viability may constitute irreparable harm.").

[64] Docket no. 149-1, § 21.

[65] Docket no. 149-2, ¶ 30.

granting or withholding of the requested relief."[66] Here, if the requested injunctive relief is not granted, Paparazzi faces continued attacks on its reputation, lost customers, loss of goodwill, lost market share, and lost future business.[67] Souza—on the other hand—cannot be said to suffer any harm if a preliminary injunction is granted. A preliminary injunction would merely require Souza to do what she has already agreed: not to defame or disparage Paparazzi or its owners.

Moreover, any harm that Souza could face by issuance of a preliminary injunction is the result of Souza's own action. Souza's own words—as set forth in the October 7 Video and November 18 Post demonstrate that she was fully aware that she could not defame or disparage Paparazzi, but she chose to do so anyway. Courts generally recognize that a party against whom an injunction is sought cannot claim injury from self-inflicted harm.[68] As such, that harm to Paparazzi if the injunction is not granted significantly outweighs any potential harm to Souza.

### 2.1.4  Public Interest Favor Injunctive Relief.

Public interest also favors granting a preliminary injunction. "[T]he public has an interest in . . . the enforcement of lawful contractual obligations."[69] A preliminary injunction simply

---

[66] *M.G. through Garcia v. Armijo*, 117 F.4th 1230, 1238 (10th Cir. 2024).

[67] ECF No 149-2, ¶ 27

[68] *See, e.g., Telestrata, LLC v. NetTALK.com, Inc.*, 126 F. Supp. 3d 1344, 1355 (S.D. Fla. 2015) ("[I]n considering the potential harm to a non-movant, a court may discount potential harm that would arise due to the actions of the non-movant."); *MNI Mgmt., Inc. v. Wine King, LLC*, 542 F. Supp. 2d 389, 403 (D.N.J. 2008) ("The injury a nonmoving party might suffer if an injunction is granted should be discounted if there are any facts indicating that the injury was self-inflicted."); *Opticians Ass'n of Am. v. Indep. Opticians of Am.*, 920 F.2d 187, 197 (3d Cir. 1990) (a party "can hardly claim to be harmed [where] it brought any and all difficulties occasioned by the issuance of an injunction upon itself.").

[69] *Neways Inc. v. Mower*, 543 F. Supp. 2d 1277, 1290 (D. Utah 2008); *see also Paparazzi, LLC v. Sorenson*, No. 4:22-CV-00028-DN, 2022 WL 1606559, at *4 (D. Utah May 20, 2022) (citing *MC Oil v. Ultra Res., Inc.*, 2015 WL 5126268, * 2 (D. Utah Sept. 1, 2015)) ("[P]ublic policy favors enforcement of contracts . . . .").

15

requires Souza to comply with the Settlement Agreement, something she is already contractually required to do.

### 2.1.5   No Bond Is Required

Rule 65 states injunctive relief is appropriate only if "the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."[70] Courts may, however, exercise discretion to determine no bond is necessary.[71] Because a written agreement proscribes the precise behavior that gave rise to this case, the earlier arbitration, and Settlement Agreement, and the parties' agreement specifically contemplates the remedy requested, Souza will suffer no damage because of entry of a TRO. Again, a preliminary injunction merely requires Souza to do what she has already agreed to do, which is not disparage or defame Paparazzi. Accordingly, this Court should not require Paparazzi to post a bond.

## 3   PRELIMINARY INJUNCTION

A.  IT IS HEREBY ORDERED, ADJUDGED, and DECREED that the Motion for Preliminary Injunction[72] is GRANTED and:

>   (a) Souza;
>
>   (b) her agents, servants, representatives, employees, and attorneys; and
>
>   (c) other persons who are in active concert or participation with Souza
>
>   who receive actual notice by personal service or otherwise:

---

[70] Fed. R. Civ. P. 65(c); *RoDa Drilling Co.*, 552 F.3d at 1215 (quoting Fed. R. Civ. P. 65(c)).

[71] *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1215 (10th Cir. 2009); *Coquina Oil Corp. v. Transwestern Pipeline Co.*, 825 F.2d 1416, 1462 (10th Cir. 1987).

[72] Docket no. 149, filed November 21, 2025.

    1.     Must abide by the terms of the Settlement Agreement entered between her and Paparazzi, including but not limited to, observing the non-disparagement provision of that agreement; and

    2.     Must cease making any statements that disparage Paparazzi (through implication or otherwise), including any statement or comment that alleges, suggests, or implies Paparazzi's products are the cause of her alleged colon cancer or any other health issues, whether she references Paparazzi by name or implication in any public or private forum, including but not limited to, forums existing on any social media or online platform.

B.  IT IS FURTHER ORDERED that:

1. The Motion for Temporary Restraining Order is MOOT;[73]

2. Paparazzi is responsible for serving this Order on Souza and other persons to be bound and for filing proof of service as soon as possible; and

3. Paparazzi shall notify the court (a) quarterly of the status of the arbitration and (b) promptly file a motion to confirm the award upon the conclusion of the arbitration to permit this case to be closed.

Signed December 22, 2025.

                      BY THE COURT

                      _____
                      David Nuffer
                      United States District Judge

---

[73] Docket no. 149, filed November 21, 2025.